## CHARLES V. JACKMAN *vs.* ARLINGTON MILLS.

Essex. Nov. 7, 1883. — June 28, 1884. W. ALLEN & HOLMES, JJ., absent.

A landlord is liable for the acts of his tenant in polluting the waters of a brook, which is a natural watercourse running through the premises, by discharging sink water therein, if the building leased is adapted and intended to be used in the manner complained of, whether he retains control over the house or not.

In an action for polluting the waters of a brook, which is a natural watercourse, if the injury to the plaintiff resulting from the defendant's acts can be specifically ascertained, it is no defence that the plaintiff has also polluted the brook.

A landowner may collect the surface water of his land, and the water drawn from wells therein, into an artificial stream, and discharge this stream into a natural watercourse running through his land, provided that this is done in the reasonable use of his land, and that the volume of water is not increased beyond the natural capacity of the watercourse to discharge it, and the land of an adjoining owner is not thereby overflowed and materially injured.

TORT, for increasing the water supply of a brook, which was a natural watercourse, and which rose in and ran through land of the defendant to and through the plaintiff's premises, and for polluting the waters of the same. Trial in the Superior Court, before *Brigham*, C. J., who allowed a bill of exceptions, in substance as follows:

In 1882, the defendant built four cesspools in private ways on its own land, and from them laid drain pipes to a ten-inch pipe which emptied into a ditch on the defendant's land. This

ditch connected with the brook at a point nearly five hundred feet from the land of the plaintiff. The defendant also erected six tenement houses on these private ways, and dug six wells, which were connected by pipes with the houses. After the houses were occupied, the sink water from them passed through the drain pipes and the ditch into the brook. These pipes also carried off the surface water from the defendant's land, which sloped towards the brook. No cisterns were used in connection with the houses, and their privy vaults had no outlet.

The plaintiff contended, and offered evidence tending to prove, that, in consequence of the acts of the defendant, the supply of water in the brook was increased to such an extent as to cause the brook to overflow its banks and a box drain through which it ran on his land, and to flow into the cellar of a house on his land, thereby causing the same to become unwholesome and unfit for habitation, both by reason of the water remaining in the cellar and by reason of the offensive odors arising therefrom.

The defendant introduced evidence tending to prove that for the past three years the plaintiff had maintained a two-story privy in his said house, which was occupied by tenants of the plaintiff, with no vault connected therewith, and that the deposits therefrom went upon the surface of land at the end of the house, which land sloped toward said brook, and that there was nothing around these deposits to obstruct the flow of liquids therefrom.

The defendant contended, and introduced evidence tending to prove, that the tenements on its land were ready for use and occupation in the spring of 1882; that one half of them remained unoccupied during six months of that year; that when used or occupied they were so used and occupied by tenants at will of the defendant; and that the defendant, by the terms of letting, reserved no control over the tenements, or over the manner of their use when occupied or used, and did not agree to make any repairs upon the same.

The defendant requested the judge to instruct the jury as follows:

" 1. The defendant had the right to turn all the surface water coming upon its land or private ways, at all seasons of the year, into that portion of the brook which was upon its premises.

2. Independently of the question of pollution, the defendant had the right to turn such water as came from its wells, which were used solely in connection with its tenement-houses for domestic purposes only, into the brook at a point on its premises. 4. The defendant is not responsible for any pollution of the waters of this brook caused by sink water which came from tenement houses owned by the defendant, if the jury find that such houses were at the time let by the defendant to tenants at will or for years, and that the defendant retained no control over said tenements, or the manner of their use, under the terms of letting, during the occupation of such tenants. 5. If the negligence of the plaintiff in maintaining his own privy contributed in any degree to the injuries resulting from offensive odors or the pollution of the waters of the brook, he cannot recover damages sustained by reason of such odors or pollution."

The judge ruled that the doctrine of contributory negligence did not apply to this case upon the questions of pollution of the brook and offensive odors, and declined to give either of the foregoing requests for instructions; and instructed the jury as follows:

" An owner of land has a right to occupy and improve it, in such manner and for such purposes as he may think fit, either by changing its surface, or by erecting buildings or other structures, or by laying out roads thereon ; and this right is not restricted or modified by the fact that his own land is so situated, in its relation to land adjoining, that an alteration in the mode of his improvement and occupation of his own land will cause water, which may accumulate thereon by rains or melting snows falling on its surface or flowing upon it over the surface of adjoining lands, to flow to and stand in unusual quantities on adjoining lands, or pass into and over the same in greater quantities or in other directions than such waters would naturally flow and were accustomed to flow. No right to regulate or control the surface drainage of water can be asserted, by the owner of one lot of land, over the right of another owner of adjoining land, in that matter.

" It is a general rule applicable to the use and improvement of land, that the right of a person to the free and unrestrained control of his land, upon, above, and beneath its surface, cannot

be interfered with or restricted by any consideration of injury to other persons which may be occasioned by the flow of mere surface water in consequence of the lawful appropriation of land by its owner to a particular use or mode of occupation. A person may improve any portion of his land, although he may thereby cause the surface water flowing thereon, wheresoever it may come, to pass off in a different direction and in larger quantities than formerly.

" But an owner of land has no right to a flow of surface water over land adjoining it, by collecting it in drains, culverts, or artificial channels, so as to convert a flow of surface water into a running stream, with all the physical characteristics of a natural watercourse. An unlawful collection of surface water in an artificial channel, and its discharge, by the owner of land upon which such surface water has fallen and in which there is a natural watercourse, upon adjoining land through which the same watercourse flows, whether immediately and directly upon such adjoining land, or its discharge into such natural watercourse in which the water so discharged by artificial means flows to such adjoining land, and so augmenting such natural watercourse as to cause its banks and such adjoining land to be inundated, or to be carried into such natural watercourse polluting or defiling matters mingled with such surface water, which are noxious or offensive, to the injury of the owner of such adjoining land in his use and enjoyment of his land, or in his rights in that natural watercourse, afford him a cause of action in which he may recover adequate damages for such injury.

" The essential of a natural watercourse is a channel with well-defined bed and banks, in which there is a regular and natural, although not necessarily an incessant, flow of water from a permanent source, through which channel its water flows in a customary current, and in which it has a substantial and well-defined existence, as distinguished from an occasional and temporary outburst of water caused by rain or melting snow, or water which in time of freshets fills low and marshy places, and runs over and inundates adjoining lands.

" The law requires of a person through whose land a natural watercourse flows, that he should use the same in such manner as not to destroy, impair, or materially affect the beneficial

appropriation of the same watercourse by the owner of land below, through which it flows. Any diversion or obstruction of the water of a natural watercouse which substantially diminishes, or the turning into it of extraneous waters which greatly enlarges, the volume of the stream, or any acts which defile or corrupt it to such a degree as essentially to impair its purity, or to cause noxious or offensive matter or stenches to be in or arise from it, and prevent the use and enjoyment of that watercourse for any of the reasonable and proper purposes to which running water is adapted and usually applied, in agriculture, mechanical power, or domestic use, are violations of the rights of owners of land through which a natural watercourse thus diminished, increased, or polluted flows, — and are misappropriations of that natural watercourse, and constitute a nuisance for which persons thereby injured are entitled to recover adequate damages.

"The water of wells dug upon the land of any person cannot be lawfully discharged upon adjoining land, to its injury, either by being mingled with surface water, or by being turned into a natural watercourse so as greatly to enlarge it. If the defendant, in the use and improvement of its land, erected tenement buildings on the same where a natural watercourse flowed, and provided wells, sinks, and drains adapted and intended for use, and the same were all the wells, sinks, and drains provided and adapted for the use of the tenants of said tenement houses, and the persons who occupied the same as tenants of the defendant, in making a necessary and reasonable use of such wells, sinks, and drains, caused noxious or offensive water or other matters to mingle with surface water on the defendant's land, on which such tenement buildings were, and land adjoining and constituting a part of the same, and to flow in and with it from said tenement buildings directly to and upon the plaintiff's land, or into the natural watercourse which flowed through the plaintiff's and the defendant's adjoining lands, so as to pollute or defile the water of that natural watercourse as it passed to and through the plaintiff's land to the plaintiff's injury, he may maintain this action against the defendant for that injury; notwithstanding no other legal relation existed between the defendant and the persons occupying such tenement houses as the defendant's tenants than the ordinary legal relations between landlord and

tenant, in the letting of tenements in such tenement houses to the several tenants who occupied the same; and notwithstanding that, in such letting, the defendant neither exercised nor reserved any control of the use of such wells, sinks, or drains, and the same were, as originally constructed and afterwards maintained by the defendant, properly constructed, adapted, and arranged for the necessary and reasonable purposes of wells, sinks, and drains.

" If under these instructions the jury find that the plaintiff has proved, by a clear preponderance of evidence, the doing by the defendant of any of the wrongful acts alleged in the declaration, he can recover such damages only as can be specifically ascertained and assessed, as found to be due exclusively to and inseparable from the defendant's wrongful acts, and the direct and natural results thereof. The facts, that the proved injuries to the plaintiff's land and house from the inundation of the same by water, or from filthy and stinking water, are due in part to his boxing up a natural watercourse flowing through his own land, or to his privy or sinks or drains, under his control, affecting the surface water or the natural watercourse on his own land, are not decisive of his right to recover adequate and appropriate damages in this action, for injuries of the same character due to the defendant's wrongful acts. But if the injuries to the plaintiff's land and houses, as proved in this trial, cannot be distinguished in their consequences to him from injuries of the same character arising from sources within his own control, or from injuries to him by the wrongful acts of persons other than the defendant or its agents or servants, the plaintiff can recover nominal damages only."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*E. T. Burley*, for the defendant.

*W. S. Knox*, for the plaintiff.

FIELD, J. Of the requests for instructions by the defendant, the fourth and fifth relate to the pollution of the water, and the first and second to the increase in volume of the water in the watercourse.

The defendant waived at the argument the exception to the refusal to give the third instruction requested. It is manifest

that the fifth instruction requested ought not to have been given, and the instructions given in place of it seem to be correct. As to the fourth request, the houses, drains, and wells were constructed and owned by the defendant, and were adapted to be used and intended to be used by the tenants in the manner in which they were used. The defendant cannot escape responsibility because it has let the houses, and, by the terms of the letting, retained no control over them. The right or authority to use the water from the wells in the houses, and to have it run off through the drains, was either given to the tenants by the letting, or was not; if not given, the defendant has the control of the water; if given, the defendant has authorized this use of the water. *Prentiss* v. *Wood*, 132 Mass. 486.

If the injury to the plaintiff resulting from the defendant's unlawful pollution of the waters of the brook can be specifically ascertained, it is no defence that the plaintiff in some degree has also polluted the brook. *Sherman* v. *Fall River Iron Works*, 5 Allen, 213. *Clarke* v. *French*, 122 Mass. 419. *Brown* v. *Dean*, 123 Mass. 254. *Crossley* v. *Lightowler*, L. R. 2 Ch. 478.

The first request for instruction was too general; it was not even limited to such surface water as would have naturally flowed into the brook above the land of the plaintiff. We take the law to be, that the owner of land has no right to collect the surface water into an artificial stream, and discharge it upon the adjoining land of another in such quantities and in such a manner as materially to injure the land; but that such an owner has the right to collect the surface water and the natural drainage of his land into an artificial stream, and discharge it into a natural watercourse on his own land, if the watercourse is the natural outlet of the waters thus collected, even although, by this artificial arrangement, the flow of the waters is accelerated, and the volume at times is increased, provided that this is done in the reasonable use of his own land, and that the discharge is not beyond the natural capacity of the watercourse, and the land of a riparian owner is not thereby overflowed, and materially injured. But he has no right to subject the land of another to a servitude of running water to which it is not naturally subject. *White* v. *Chapin*, 12 Allen, 516. *Curtis* v.

*Eastern Railroad*, 98 Mass. 428.  *Carter* v. *Thurston*, 58 N. H. 104.  *Noonan* v. *Albany*, 79 N. Y. 470.  *McCormick* v. *Horan*, 81 N. Y. 86.  *Barkley* v. *Wilcox*, 86 N. Y. 140.  *Hughes* v. *Anderson*, 68 Ala. 280.   This seems to be substantially the rule of law laid down by the presiding justice.  The exception to the charge is general, and if, in the opinion of the counsel for the defendant, the charge ought to have been more definite, it was his duty specifically to have made the request.

The second request was made without any limitations as to the quantity of water from wells used for domestic purposes which might be turned into a natural watercourse.   When land becomes thickly settled, the quantity of water from this source might be very large, and the whole or a considerable portion of it might be water that naturally would not flow into the watercourse.   It seems to be settled that one riparian landowner has no right to turn into a natural watercourse another stream, or surface water which does not naturally flow into it, in such quantities as to so increase the volume of water in the watercourse that substantial injury is thereby done to a riparian landowner lower down.   But to dig wells for domestic purposes is a reasonable use of land, and, although we have been shown no case directly in point, we are of opinion that the water drawn from such wells to the surface is like water artificially accumulated in the reasonable use which an owner may make of his land; and that it may be turned into a watercourse which is the natural outlet of the drainage of the land, with the same limitation, namely, that the volume of water is not increased beyond the natural capacity of the watercourse to discharge it, and the lands of others adjoining the watercourse are not thereby overflowed. The instruction of the presiding justice was, that " the water of wells dug upon the land of any person cannot be lawfully discharged upon adjoining land, to its injury, either by being mingled with surface water, or by being turned into a watercourse so as greatly to enlarge it."   The contention of the plaintiff was, " that, in consequence of the acts of the defendant, the supply of water in the brook was increased to such an extent as to cause the brook to overflow its banks," and to flow into the cellar of his house.   The words in the instruction, " so as greatly to enlarge " the watercourse, are undoubtedly very

indefinite, but the defendant's counsel did not specially except to them. As his exception to the charge was general, if his requests for instruction ought not to have been given, he cannot, as of right, avail himself of any errors in the charge. *Curry* v. *Porter*, 125 Mass. 94.

The court, if it found the instructions given misleading, might in its discretion grant a new trial. But we are not satisfied that this instruction, taken in connection with the claim made, was misleading. If the effect of the acts of the defendant, by the use of wells and other artificial arrangements was so to increase the volume of the waters of the brook as to cause them to overflow the banks, and flow into the cellar of the house of the plaintiff, we cannot say that this was not an unlawful use of the brook. *Exceptions overruled.*