*G. F. Richardson,* (*H. G. Nichols & G. D. Braman* with him,) for the trustees.

---

### WINIFRED DALAY *vs.* HENRY W. SAVAGE.

Suffolk. Nov. 9, 1886. — Sept. 6, 1887. GARDNER, J., absent.

Land abutting on a public street in a city was sold under a power contained in a mortgage, and the owner of the equity of redemption released any title he might have to the purchaser, and was allowed by the purchaser to remain in possession under an agreement that he should pay rent at a certain rate monthly. At the time of the sale there was an open and visible defect in the cover of a coal-hole in the sidewalk in front of a house on the land, which hole led to the cellar of the house. In consequence of this defect, during the tenancy, a person walking on the sidewalk fell into the hole. *Held,* that he could maintain an action against the purchaser of the land for the injury thereby sustained.

TORT for personal injuries sustained by the plaintiff, on December 17, 1883, by falling into a coal-hole in the sidewalk in front of a house on Wall Street, in Boston. Trial in the Superior Court, before *Mason,* J., who allowed a bill of exceptions, in substance as follows:

There was evidence tending to show that the plaintiff, while in the exercise of due care, fell into the coal-hole in question. It was admitted that Wall Street then was, and for many years had been, a public street of the city of Boston ; that said

premises were conveyed to the defendant on November 3, 1883, by virtue of a power of sale contained in a mortgage of said premises, for the purpose of foreclosing said mortgage; that said premises had been conveyed, subject to said mortgage, to Daniel Breslin, on April 20, 1875, and he occupied the same from that date till after this accident; that he quitclaimed said premises to the defendant on November 9, 1883; and that the defendant was the owner of the premises at the time of the accident.

Breslin testified that he remained at a rent of $41.67 per month; that the defendant was to give him $25; that the defendant permitted him to remain and pay the rent because the defendant had not paid the $25. It appeared in evidence that Breslin remained in occupancy of said premises, under said oral agreement, from November 3, 1883, till some months after the injuries complained of.

One Durnan, a witness for the plaintiff, testified that, after assisting the plaintiff to her home, a few rods distant, he went back and examined the coal-hole, and that there was no chain on the cover, only a three-strand rope about three quarters of an inch thick; that the bed on which the cover lay had filled up with snow and dirt; and that it was liable to slip from the way it was fastened. He also testified, on cross-examination, that the bed-piece, or stone surrounding the coal-hole on which the plate or cover rested, was well worn, chipped off, and broken at the edges; and that it appeared to him this had been so a long time, so that, whether tied or untied from the inside, the cover, on being stepped on, would tip up. It also appeared in evidence that the bed had not changed in this respect during the tenancy.

The evidence tended to show that, on the day immediately following the injury, the coal-hole was repaired by some one other than the tenant, by cutting away the broken edges of the bed-piece and setting the cover deeper in the stone.

On the whole evidence, the judge ruled that the action could not be maintained; and ordered the jury to return a verdict for the defendant. The plaintiff alleged exceptions.

*P. O'Loughlin,* for the plaintiff.

*T. S. Dame,* for the defendant.

FIELD, J.   The defendant received a conveyance of the prem-ises on November 3, 1883, having purchased them at a sale under a power contained in a mortgage.  Breslin, on April 20, 1875, had become the owner of the equity of redemption, subject to this mortgage, and he occupied the premises from this date until after the accident, which, it was admitted at the argument, occurred on December 17, 1883.

On November 9, 1883, Breslin quitclaimed whatever title he had in the premises to the defendant, for which the defendant agreed to pay him $25, and Breslin remained in occupation, as the tenant at will of the defendant, under an agreement to pay rent at the rate of $41.67 a month.   There was evidence from which the jury might have found that the stone surround-ing the cover of the coal-hole was permanently defective at the time the defendant became owner; that it continued in this defective condition until after the accident, and was of such a character that "the cover, on being stepped on, would tip up," whether it was tied or not on the inside; and that the accident happened, not through the negligent manner in which Breslin used the premises, but through the defective condition of the stone surrounding the cover of the coal-hole.

The defendant as landlord was under no obligation to Breslin to keep the coal-hole in repair, and Breslin was under no obli-gation to the defendant to repair it.   It does not appear in the exceptions that the defendant at any time knew that the coal-hole was in a defective and dangerous condition.

It seems to be settled, that, if a landlord lets premises abut-ting upon a way, which are from their condition or construction dangerous to persons lawfully using the way, he is liable to such persons for injuries suffered thereupon, although the premises are occupied by a tenant, unless the tenant has agreed with his land-lord to put the premises in proper repair.   That the tenant may also be liable is not a defence for the landlord.

The case which perhaps most nearly resembles this is *Gandy* v. *Jubber*, 5 B. & S. 78; *S. C.*, in the Exchequer Chamber, 5 B. & S. 485.   The reasons why the Court of Exchequer Chamber recommended that the plaintiffs, who had recovered judgment in the Queen's Bench, should consent that the proceedings be stayed, do not appear in the report; but in 9 B. & S. 15, there

is what purports to be the undelivered judgment of that court in the case. One question was whether a landlord who has the power to determine a tenancy from year to year by giving notice, and who does not exercise it, is to be held as thereby reletting the premises. In the course of the argument in the Exchequer Chamber, Chief Justice Erle said of the landlord's liability, " If he lets the premises with a nuisance, all parties agree that he is responsible." In the opinion published in 9 B. & S. 15, the grounds on which the Court of Exchequer Chamber differed from that of the Queen's Bench distinctly appear as follows: " We agree that to bring liability home to the owner, the premises being let, the nuisance must be one which was in its very essence and nature a nuisance at the time of letting, and not something which was capable of being thereafter rendered a nuisance by the tenant, and that it is a sound principle of law that the owner of property receiving rent should be liable for a nuisance existing on his premises, at the date of the demise ; but that wherein we differ is that a landlord from year to year having the power of giving the ordinary notice to quit and not giving it is thereby to be held as reletting the premises, and that such forbearing to give notice is equivalent to a reletting."

The reason of the rule, that if a landlord lets premises in a condition which is dangerous to the public, or with a nuisance upon them, he is liable to strangers for injuries suffered therefrom, is that by the letting he has authorized the continuance of the nuisance.

*Pretty* v. *Bickmore,* L. R. 8 C. P. 401, was decided on the ground that the tenant had covenanted to keep the premises in repair, and therefore the landlord could not be said to have given authority that the premises should be kept in a dangerous state. *Gwinnell* v. *Eamer,* L. R. 10 C. P. 658, follows *Pretty* v. *Bickmore.* See also *Leonard* v. *Storer,* 115 Mass. 86.

In *Nelson* v. *Liverpool Brewery Co.* 2 C. P. D. 311, it is expressly said that, if the landlord lets premises in a ruinous condition, he is liable to strangers.

In *Saltonstall* v. *Banker,* 8 Gray, 195, 197, the decisions in *Rich* v. *Basterfield,* 4 C. B. 783, and in *The King* v. *Pedly,* 1 A. & E. 822, are approved, and it is said that, if the nuisance

existed at the time of the demise, the landlord is liable. See also *Todd* v. *Flight*, 9 C. B. (N. S.) 377.

In *Jackman* v. *Arlington Mills*, 137 Mass. 277, the landlord was held liable for the acts of his tenants in polluting the water of a brook by discharging into it the sink-water from the houses let, and the reason given was, that the houses let were intended to be used by the tenants in the manner in which they were used, and that, if the landlord did not retain the control of the water used by the tenants, he had by the letting authorized the use which the tenants made of the water. See also *Owings* v. *Jones*, 9 Md. 108; *Peoria* v. *Simpson*, 110 Ill. 294, 300; *Irvine* v. *Wood*, 51 N. Y. 224; *Durant* v. *Palmer*, 5 Dutch. 544.

An attempt has been made to bring the present case within the rule, that if the nuisance is created by a tenant, or by a former owner who has let the premises to a tenant, a grantee is not liable for any injury that may result from the condition of the premises while the occupation of the tenant continues. If the defendant had bought the premises subject to a lease to Breslin, who had continued in occupation under it, a different case would have been presented. But when the defendant purchased the premises, and a deed was delivered to him by the mortgagee, pursuant to the power of sale contained in the mortgage, he became the owner, and Breslin had no longer the right of occupation. The defendant could then have immediately taken possession. After this the defendant voluntarily let the premises to Breslin as a tenant at will, and, at the time of the accident, Breslin held possession by agreement with the defendant. It is strictly a case where the defendant let premises with a nuisance upon them, and took no agreement from the tenant to abate the nuisance, or to repair the premises. So far as appears, the plaintiff was lawfully travelling upon the highway, and if the coal-hole was in a permanently dangerous condition, and this condition existed when the defendant let the premises, the landlord is not excused from liability by the fact that the premises were in the occupation of a tenant at the time when the plaintiff was injured.

It is not necessary to determine whether the owner or occupant in his relations to the public is bound at all events to keep the covering of a coal-hole in a public street safe, or is only

bound to use reasonable care. There was evidence that the defect in the covering of the coal-hole had existed for a long time, and was open and visible, and such that the person whose duty it was to repair it ought to have known its condition.

In the opinion of a majority of the court, the exceptions must be sustained. *Exceptions sustained.*