MISSEL v. LENNOX et al.

(Circuit Court of Appeals, First Circuit. October 1, 1907.)

No. 703.

LANDLORD AND TENANT—NEGLIGENCE—DANGEROUS ELEVATOR IN BUILDING—INJURY TO TRESPASSER.

Defendants were the owners of a building consisting of several floors leased to tenants engaged in the manufacture of shoes. There were two stairways reaching to the several floors from different sides of the building, and on another side was a freight elevator, the entrance to which opened on the street. There was no stairway from said entrance, and there was a sign on the elevator shaft reading, "For freight only." Plaintiff was a shoe workman, and, seeing a sign on that side of the building that vampers were wanted, asked a teamster the way into the building, and the teamster, who was going up with some leather, took plaintiff with him in the freight elevator. Plaintiff was told to return the next day, which he did, going down and coming back with some one who was using the elevator. On the second day, not having been employed, when he wished to go down, there was no one at the elevator, but the door of the shaft was open, and he stepped in upon a trapdoor, which he supposed was the elevator. In a moment the elevator ascended, opening the trapdoor, and plaintiff was caught and injured. By the provisions of the leases, the operation of the elevator was left entirely to the tenants, who kept no one in charge, but each used it when occasion required. It was rarely used except by some one bringing up or taking down freight. *Held,*

that plaintiff was not in the elevator by invitation of defendants or their tenants, either express or implied, and therefore defendants owed him no duty of care, and were not liable for his injury.

In Error to the Circuit Court of the United States for the District of Massachusetts.

Sherman L. Whipple (Alexander Lincoln and Whipple, Sears & Ogden, on the brief), for plaintiff in error.

Romney Spring (Mathews, Thompson & Spring, on the brief), for defendants in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

COLT, Circuit Judge. This is an action of tort to recover for personal injuries, and the case is now before this court on writ of error. At the conclusion of the evidence, the court below directed a verdict for the defendants, and the assignments of error all relate to this ruling.

The plaintiff, while seeking employment, was injured by stepping on the hatches of a freight elevator well in a building owned by the defendants, but which was leased to several tenants engaged in the manufacture of shoes.

The building is located in the city of Lynn, and is shaped like a blunted V, with the front on Liberty Square, one side on Broad street and the other side on Union street.

The entrance to the elevator shaft in which the accident happened was on Broad street. In the entrance there were no stairs leading to rooms on the upper floors, and no doors leading to rooms on the first floor. It was simply an entrance to the freight elevator. There were, however, front stairs on Liberty Square leading to the top of the building and back stairs near the engine room in the rear of the building.

Inside the entrance to the elevator, and close to it, was the sign, "For freight only." There was testimony that on the outside of the building near this entrance was a signboard, on which was placed a sign, "Vampers Wanted."

The leases contained the provision, "including the space on this floor used for stairways, halls and elevators," and also the following provisions:

"The lessee shall have the use of the stairways, hallways and elevators in common with the other tenants of said building. * * * The lessors agree to furnish heat and power at all times during the continuance of this lease, excepting nights, Sundays, and legal holidays, and except in case of fire, unavoidable casualty, accidents, strikes, and twenty-four hours each year for inspection and cleaning out of boilers, to properly heat demised premises, and to properly run the elevators and whatever shafting it may be desired to run in said premises."

The elevator well was inclosed by a sheathing, with doors on two sides on each floor. The elevator itself was merely a platform without sides, with a bar overhead, from which the elevator was supported. Trapdoors, or hatches, were placed on every floor, which were opened by an iron hoop over the top of the elevator as it ascended, and by arms on its sides as the elevator descended. There were signal bells for the elevator on each floor. These bells were not automatic, but would ring

when a button was pushed. There was also evidence that the noise made by opening and closing of the hatches, as the elevator ascended or descended, could be heard for at least two floors.

The inspector of public buildings testified that when this elevator was put in use he inspected it and approved of it, and that it was equipped in the same manner at the time of the accident. There was further testimony that elevators constructed in the same way were common in the city of Lynn. The plaintiff contended, however, that the elevator was defective in its original construction, in that it was not equipped with such devices as were required by section 27 of chapter 104 of the Revised Laws of Massachusetts:

"Elevators used for carrying freight shall be equipped with a suitable device which shall act as a danger signal to warn people of the approach of the elevator. * * * All the above construction work and devices shall be approved by the inspectors of factories and public buildings, except that in the city of Boston they shall be approved by the building commissioner, and in other cities by the inspector of buildings; but, upon the approval of said commissioner, or inspector of buildings, or inspector of factories and public buildings, any elevator may be used without any or all of such appliances or devices if the nature of the business is such that the necessity for the same will not warrant the expense."

The plaintiff was a Russian, and a vamper by trade. According to his story, on the day before the accident he was passing along Broad street, accompanied by his brother-in-law, when they noticed the sign, "Vampers Wanted," on the outside of the building. The plaintiff thereupon asked a teamster how to get upstairs. The teamster said:

"Wait: I am going to take up some leather, and I will take you upstairs on the elevator."

The teamster stopped the elevator at the third floor, and knocked on the door, and somebody opened the door. The plaintiff went out and asked where the stitching room was, and saw the forewoman of the stitching room, who told him to wait a few minutes until she got a machine ready for him; so he sat down and waited about half an hour. Then she came up to him and told him that she was very busy, that the machine required some repairing, and to come the next day. So he went to the elevator again and saw a man who was taking down some cases of shoes, and they went down together.

The next day, about 9 or 10 o'clock, he went back alone to the same place. When he got to the elevator he found nobody there, but waited until a boy came, who was going upstairs, and who took him up two flights, when he got out of the elevator and went to the stitching room. There he saw the woman in charge of the room, who told him that the machine did not run, and said: "Therefore, I have no work for you."

When the plaintiff came to the place where the elevator ran, he found the door open, and went in, thinking he was entering the elevator. It was dark inside, and the trapdoors on which he stepped looked just like the floor of the elevator. Before he stepped in he heard no bell or signal of warning that the elevator was approaching.

As soon as he entered, the doors from below began to open. At first he thought that the elevator was beginning to go up. Then, as the doors kept rising, he fell and was caught with one leg between the door and the wall of the elevator, and in consequence his leg was crushed.

The elevator did not open into the stitching room, but into the cutting room. To get from the elevator to the stitching room it was necessary to go through the door from the cutting room to the stock fitting room, and through another door from the stock fitting room to the stitching room. There was, however, an entrance to the stitching room from Liberty Square by means of stairs.

With respect to the use of the elevator, Francis A. Cummings, a witness in the employ of Randall-Adams Company, one of the tenants, and called by the plaintiff, testified as follows:

"He had seen using the elevator anybody who had business on it, like expressmen or people going after shipments of goods above him, or anything like that; that he had seen them coming up there after bags of. leather and bags of rags and sometimes shoes and shipments of shoes; that there had been times when boys and men went up there to go into the different departments of the factory; that he had seen people coming up bringing bundles, packages, and things; that he would see such people using the elevator and coming from it on to the floor every day; that while he was there he never saw any one in charge of the elevator and operating it or running it regularly who was hired for that purpose."

From the foregoing evidence, it appears that when the defendants leased this building to the several tenants they intended that this elevator should be used exclusively for freight, and not for passengers or persons seeking employment. This is evident from its construction, equipment, and from the notice, "For freight only." It further appears that the building was provided with suitable means of ingress and egress in the form of front and back stairs leading to all the floors.

We also think it clear that under the provisions of the leases the control of the elevator was left with the tenants, and that at the time of the accident the Randall-Adams Company, who occupied the entire third floor, were in the possession of the doors leading to the elevator and of the hatches upon which the plaintiff was injured. The plaintiff, however, does not view this question of control as material upon the ground that the particular defect of which he complains, and of which, as he contends, there was evidence to go to the jury, was in the original construction of the elevator, and that for such a defect the responsibility always rests with the owners, notwithstanding they may have leased the entire building and thereby parted with all control of the elevators. Larue v. Farren Hotel Company, 116 Mass. 67; Shipley v. Fifty Associates, 106 Mass. 194, 8 Am. Rep. 318; Dalay v. Savage, 145 Mass. 38, 12 N. E. 841, 1 Am. St. Rep. 429; Shepard v. Creamer, 160 Mass. 496, 36 N. E. 475.

But, aside from and independently of these considerations, it is conceded that, in order to maintain this action, the plaintiff must show either an express or implied invitation extended to him by the defendants to use the elevator at the time he was injured, since, in the absence of any such invitation, the defendants owed the plaintiff no duty with respect to the construction and condition of the elevator, and cannot therefore be chargeable with negligence. Sweeny v. Old Colony & Newport Railroad Company, 10 Allen, 368, 87 Am. Dec. 644.

We have to determine therefore, whether there was any substantial evidence upon which the jury might have found either an express or implied invitation by the defendants.

The only evidence of an express invitation is that the woman in charge of the stitching room told the plaintiff to come the next day. While this may be regarded as an express invitation by the tenant, authorized by the defendants, to visit the building by the usual means of ingress and egress provided, namely, the stairways, it cannot be held to be an invitation to use the freight elevator for such a purpose. In this connection, it may also be observed that there were stairs leading to the street which were directly connected with this stitching room, and that in order to reach the freight elevator from this room it was necessary to pass through the stock fitting room to the cutting room.

It remains to consider whether there was evidence which should have been submitted to the jury of an implied invitation arising (1) from the general use of the elevator for purposes other than freight, and (2) from the situation and appearance of the premises.

If the evidence had tended to show an open, general, and well-known use of the elevator for passengers, it might have been presumed that this was done with the knowledge, acquiescence, and consent of the defendants. But the proofs fail to support any such proposition. The entire evidence on this point is contained in the testimony of Cummings, which is cited above. This testimony, at most, shows that there may have been a casual use of the elevator for purposes other than freight. It is also significant in this connection to note that the first time the plaintiff went up in the elevator it was with a teamster who was taking up some leather, and that when he came down on the elevator on this occasion it was with a man taking down some cases of shoes; and, further, that the next day, when he came back, he waited until a boy came who was going upstairs and who took him up to the third floor.

As to an implied invitation arising from the situation and appearance of the premises, the plaintiff relies, first, upon the fact that there were no means of access to the different floors in or near the freight elevator entrance other than the freight elevator; the stairs being located on another street or in the rear of the building. Since this was a freight elevator, with the proper notice that it was to be used for freight only, we do not consider the circumstance that the stairs were located at some distance on another side of the building has any bearing on the question of an implied invitation by these defendants to use this elevator for ordinary passenger service.

The plaintiff also relies upon the evidence of a signboard with a sign, "Vampers Wanted," on the outside of the building near the entrance to the elevator, as tending to prove an implied invitation. Upon this point it may be said, first, that there was no evidence that the defendants had any knowledge that this notice or similar notices were ever placed on the building near the elevator entrance.

Again, if we assume that some of the tenants had placed this notice on the outside of the building, this circumstance would not be sufficient, upon the whole state of facts presented in this case, to charge the owners of the building with an implied invitation to persons seeking employment of the tenants to make use of this elevator as the proper means of ingress and egress to and from the building.

Upon full consideration of the whole evidence, we find no error in the ruling of the Circuit Court.

The judgment of the Circuit Court is affirmed, and the defendants in error recover costs in this court.