H. DEAN BOYER v. WILLIAM S. AGAPION, AAA REALTY COMPANY OF GREENSBORO, INC., AND ROBBIE MILLER

No. 7918SC638

(Filed 1 April 1980)

1. **Landlord and Tenant § 8— violation of city housing code—no negligence per se**

   Even if the condition of steps at a leased residence violated the Greensboro Housing Code, such violation did not constitute negligence *per se* on the part of the lessor.

2. **Landlord and Tenant § 8.2— tenancy from month to month—renewal each month—ruinous condition on premises—liability of lessor for injuries to third persons**

   Where premises are leased under a tenancy from month to month, there is deemed to be a renewal of the tenancy at the end of each month, and if a "ruinous condition" arises on the leased property with the knowledge of the lessor, the lessor can be held liable to third parties for injuries that occur during a subsequent rental period and are proximately caused by the defect.

3. **Landlord and Tenant § 8.2— ruinous condition when tenant takes possession—liability of landlord for injuries to third parties**

   A lessor is subject to liability for injuries at a private residence to third parties caused by a ruinous condition that exists when the tenant takes possession only when (1) the tenant does not know or have reason to know of the condition or the risk involved, and (2) the lessor knows or has reason to know of the condition, realizes or should realize the risk involved, and has reason to expect that the tenant will not discover the condition or realize the risk. Therefore, defendant lessors were not liable to plaintiff postman for injuries plaintiff received when a porch step at the leased premises broke where the tenant had the opportunity to be cognizant of the danger presented by the step and defendant lessors had reason to expect that the tenant would discover the condition and realize the risk.

APPEAL by plaintiff from *Collier, Judge*. Judgment entered 17 May 1979 in Superior Court, GUILFORD County. Heard in the Court of Appeals 30 January 1980.

Plaintiff Boyer was injured on 22 August 1975 while upon rental property owned by defendant Agapion and leased by defendant Miller and while delivering mail in the course of his employment as a postman with the U.S. Postal Service. Plaintiff injured his right leg when he stepped on the bottom porch step of the leased residence, and the step broke, causing plaintiff to fall.

There was evidence before the trial court that defendant Miller first leased the residence on 1 November 1971 from AAA Realty for a term of just two months. Miller continued to lease the property after the term was over as a month-to-month tenant and was still in possession on 22 August 1975, the day plaintiff fell. At some point before plaintiff's fall, ownership of the residence transferred from AAA Realty to defendant Agapion.

There was evidence before the trial court that the bottom step was split lengthwise and ". . . propped up on bricks." In her answer to interrogatories, defendant Miller asserted that she remembered seeing that the piece of wood holding the step up was broken and that she had informed defendant Agapion of the dangerous condition, although Miller could not remember if it was before or after plaintiff's fall.

Plaintiff brought action against Miller, AAA and Agapion claiming their negligence properly to maintain the steps proximately caused his fall. Summary judgment in favor of Agapion and AAA was granted, dismissing plaintiff's claim against them. Plaintiff appealed.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Norman B. Smith, for plaintiff appellant.*

*Perry C. Henson and J. Victor Bowman for defendant appellees.*

HILL, Judge.

Plaintiff's sole assignment of error is to the granting of summary judgment as to the lessor defendants. Plaintiff contends in his appellate brief that the lessor defendants made repairs or im-

provements to the steps in a negligent manner, that those negligent acts proximately caused his injury, and as a result the lessor defendants are liable to him.

There is no evidence of negligent repair. In response to interrogatories, Agapion stated that it was likely repairs were made on the steps before 1966. Agapion stated that the steps were painted in 1971. Miller, in response to interrogatories, stated that no repairs had been undertaken by the lessors since 1971 until after the accident. There is no basis in fact for plaintiff's claim that repairs were negligently made.

[1] Plaintiff contends the condition of the steps violated the Greensboro Housing Code and that a violation of the Code is negligence per se. In *Clarke v. Kerchner*, 11 N.C. App. 454, 181 S.E. 2d 787, *cert. denied* 279 N.C. 393 (1971), a similar interpretation of the Greensboro Housing Code was advocated. The plaintiff in that case contended that ". . . once proof of a violation is introduced, the case should go to the jury on the question of proximate cause." *Clarke, supra*, at 462.

This Court pointed out in *Clarke* that ". . . as a general rule, the owner or person in charge of property, is not liable for injuries to licensees due to the condition of the property, or as it has been expressed, due to passive negligence or acts of omission." *Clarke, supra*, at 461-2. The Court went on to state that ". . . when the premises are controlled by the tenant and the injury is caused by a defective condition of the premises, rather than by affirmative, active negligence," then "[t]he duty imposed is to refrain from doing the licensee willful injury . . . ." *See Clarke* at 462.

There are exceptions to the general rule, as when a landlord rents premises in a ruinous condition, and we discuss that exception below. With regard to plaintiff's contention regarding the Housing Code, however, it is enough for us to state that we agree with the holding in *Clarke* that the Code's purpose is not to impose a legal duty on landlords or tenants for the protection of their guests. The ordinance does not impose upon the landlord a duty to repair or maintain the premises in a safe condition. "Nor does [it] alter the duty owed by the tenant." *Clarke* at 463.

Plaintiff contends finally in his brief that the lessor defendants knowingly leased the premises in a ruinous condition, thus

rendering them liable to plaintiff if it can be shown that the ruinous condition proximately caused plaintiff's injury.

> The general and basic rule is that when third parties are injured as the result of any defective condition in leased premises he may have recourse against the lessee, but not against the lessor. [Citations omitted.] *The liability may, however, be extended to the landlord or owner* — . . . (b) where he knowingly demises the premises in a ruinous condition . . . . (Emphasis added.) (Citations omitted.) *Wilson v. Dowtin*, 215 N.C. 547, 550, 2 S.E. 2d 576, 577 (1939).

The issue becomes whether the residence was knowingly leased by the lessor defendants in a ruinous condition. The material before the Court supports a finding that the steps were in a ruinous condition on the day plaintiff was injured.

Certainly, there is no evidence that when Miller first took possession on 1 November 1971 there was any defect in the condition of the house. The lease, however, only ran for two months. After 2 January 1972, Miller was in possession of the residence as a month-to-month tenant and stated in reply to interrogatories that at some point she did inform the landlord of the defective steps.

[2] The issue now becomes whether, where premises are let under a tenancy from month to month, there is deemed to be a renewal of the lease at the end of each month. If so, and if a "ruinous condition" arises on the rental property with the knowledge of the landlord, then the landlord could be held liable to third parties for injuries that occur during a subsequent rental period and are proximately caused by the defect.

The authorities are not in agreement on this position. Some hold that the continuation of a month-to-month tenancy involves the same liability as an actual reletting. *Borman v. Sandgren*, 37 Ill. App. 160, 161 (1890); *Griffith v. Lewis*, 17 Mo. App. 605, 613 (1885). Others hold that month-to-month tenancies are of such continuing character that the landlord is not even constructively in possession at the end of each term. *Ward v. Hinkleman*, 37 Wash. 375, 381, 79 P. 956, 959 (1905).

The RESTATEMENT (SECOND) OF PROPERTY § 17.1 (1977) deals with this split between authorities and, furthermore, addresses

the issue of landlord's liability in situations such as the case *sub judice*. The section states that a landlord is subject to liability for injuries to third parties caused by a ruinous condition that exists when the tenant takes possession. Comment *i* is consistent with the Illinois and Missouri cases and states that,

> A renewal of a lease or a continuation of a periodic tenancy into a new period is treated the same as a complete termination of the lease, followed by resumption of possession by the landlord and then transfer of possession from the landlord to the tenant . . . .

Thus, the RESTATEMENT (SECOND) would subject a landlord to liability for injuries to third parties where the landlord allows a periodic tenancy to continue into the next period and at the beginning of the next period the leased property is in a condition which, if such condition existed at the time of the original leasing, would subject the landlord to liability. *See* Comment *i*.

At first blush, this analysis seems to put an onerous burden on landlords. A landlord could learn of a dangerous condition on the last day of a rental period, go to the property to correct it on the first day of the new period and still be subject to liability if someone had been injured in the meantime because of the defect.

Language in *Perez v. Raybaud*, 76 Tex. 191, 13 S.W. 177 (1890), would indicate that such a burden exists. The court in that case stated that,

> It is well settled that the owner of leased premises is liable to the public or to third persons for injuries resulting from a defective structure on the premises, when the defect existed at the time the lease was made . . . . Id. at p. 192.

*Perez* cites several cases as support for the statement above. *Dalay v. Rice*, 145 Mass. 38, 12 N.E. 841 (1887), is typical. There, plaintiff sued for damages suffered when he fell into an unprotected coal-hole in the sidewalk appurtenant to defendant's premises. The cover over the hole had been defective for some time, long enough for both the lessor and the lessee to notice, and was of such a character that it would tip up whenever someone stepped on it. The court stated at p. 843 that,

[I]f a landlord lets premises abutting upon a way, which are, from their condition or construction, dangerous to persons lawfully using the way, he is liable to such persons for injuries suffered thereupon, although the premises are occupied by a tenant . . . . That the tenant may also be liable is not a defense to the landlord.

*Dalay* citing from an English case, *Nelson v. Brewery Co.*, 2 C.P. Div. 311, goes on to say that, ". . . 'if the landlord lets premises in a ruinous condition, he is liable to strangers.'" *Dalay* at 843.

One element is common to *Dalay* and all the other cases cited by *Perez*. Each case involved an injury on leased premises used for public or quasi-public purposes. That is not the situation in the case *sub judice*. Plaintiff fell on a defective step appurtenant to a private residence.

The distinction is critical. *Sherwood Bros. v. Eckard*, 204 Md. 485, 105 A. 2d 207 (1954), recognizes and accepts the line of cases cited by *Perez*. At the same time, *Sherwood* holds, at p. 489 that,

The general rule is that the landlord is liable for injuries to persons on leased premises, such as guests or customers of the lessee, only to the same extent as he is to the tenant himself. Accordingly, in the ordinary case, the landlord *is not* liable for injuries caused by defects existing at the time of the lease *except as he may have failed to inform the lessee of defects known to him, and not apparent to the lessee*. (Emphasis added.)

*Sherwood* involved a corporate landlord of a gas station, a tenant who operated the station, and a plaintiff-salesman who was calling on the tenant for business purposes. The plaintiff went back to the greasing room, where the public was not intended to come, and was injured when a car rolled off a lift and pinned plaintiff's right leg against the wall. The court denied recovery against the landlord. While the gas station was designed for public use, the greasing room was not held to be a place where patrons were invited. The general rule, as stated in *Sherwood*, was applied, not the public use exception.

[3]   The RESTATEMENT (SECOND) OF PROPERTY adopts both rules as set forth in *Sherwood*. The general rule is set forth in § 17.1.

A landlord is subject to liability to persons on the leased property *only* if,

    (a) the tenant does not know or have reason to know of the condition of the risk involved; and

    (b) the landlord knows or has reason to know of the condition, realizes or should realize the risk involved, and has reason to expect that the tenant will not discover the condition or realize the risk.

Thus, except where the landlord conceals a defect, under § 17.1, a landlord remains liable only ". . . until the tenant has had a reasonable opportunity to discover [the defect] and take precautions . . . ." *See* Comment *f. Also see Swords v. Edgar et al.*, 59 N.Y. 28, 34, 17 A.R. 295 (1874).

Comment *g* adopts the language of *Sherwood* and states that,

The liability of the landlord to those on the leased property with the consent of the tenant is the same as it is to the tenant.

We agree with the analysis presented by the RESTATEMENT (SECOND) § 17.1. Pursuant to that analysis, we find that defendant Miller had the opportunity to be cognizant of the danger presented by the step and that the lessor defendants had reason to expect that Miller would discover the condition and realize the risk. Plaintiff must look to defendant Miller.

For the reasons stated above, the opinion of the trial court is

Affirmed.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.