LOUISE L. RIGSBEE, and AUSTIN RIGSBEE, Plaintiffs,
v.
SPECIAL FLOWERS, INC., HENRY FRANKLIN "FLIP" GURGANUS, and CLEMENTS FUNERAL SERVICE, INC. Defendants.
No. COA08-1340.
Court of Appeals of North Carolina.
Filed: August 4, 2009.
This case not for publication
Haywood, Denny & Miller, L.L.P., by George W. Miller, III, for Plaintiffs-Appellants.
McDaniel & Anderson, L.L.P., by William E. Anderson, for Defendant-Appellee Clements Funeral Service, Inc.
STEPHENS, Judge.

I. Facts and Procedural History
On 20 April 2007, Plaintiffs Louise L. Rigsbee ("Louise") and Austin Rigsbee ("Austin") filed a complaint against Defendants Special Flowers, Inc. ("Special Flowers"), Henry Franklin Gurganus ("Gurganus"), and Clements Funeral Service, Inc. ("Clements") alleging Defendants were negligent in failing to keep the premises occupied by Special Flowers in a reasonably safe condition causing Louise to suffer multiple injuries when she fell down the stairs inside the Special Flowers shop. Clements filed an answer and crossclaim on 6 June 2007 denying Plaintiffs' allegations and asserting a crossclaim against Special Flowers and Gurganus for indemnity and/or contribution. Special Flowers and Gurganus did not file any responsive pleading and default judgment was entered against them on 30 July 2007. On 11 January 2008, Clements filed a motion for summary judgment with respect to all claims against Clements. This motion was denied on 10 March 2008.
The case was called for trial on 21 April 2008, and the evidence presented at trial tended to show the following: Clements is a funeral service located at 1105 Broad Street in Durham, North Carolina. In addition to its own building, Clements owns a parking lot on one side of the funeral home, as well as a strip of adjacent "storefront" buildings facing Broad Street. Special Flowers, a flower shop owned by Gurganus, operated out of one of the storefront buildings owned by Clements, and is located "a couple hundred feet, at most," from the Clements building. The last written lease between Clements and Special Flowers expired in 2002. However, Special Flowers continued to occupy the premises and pay rent to Clements after the expiration of the written lease.
The public entrance to Special Flowers was comprised of a plate glass storefront and glass entry door. Inside the front door, an aisle led from the front door to the back of the store. At the end of this aisle, a service window was cut into the back wall of the premises which provided a view into the Special Flowers work room. The purpose of the service window was to allow Gurganus or his employees to see customers when they entered through the store's front door.
Directly underneath the service window was an open staircase that led to the basement of the store, where Gurganus displayed some of his merchandise he called "affordable treasures." The staircase was carpeted with a dark carpet. There were no signs or arrows or other indicators to alert patrons of the staircase. There was a hand rail on the right side of the staircase, but this was hidden by a part of the structure and was not visible to approaching patrons. Occasionally, Gurganus placed a piece of furniture across the head of the staircase to block the entrance. Gurganus also had a chain to stretch across the staircase's entrance to block access, but neither of these safeguards were in place on the day of Louise's fall.
On 26 August 2005, Louise entered Special Flowers to purchase a floral arrangement. When she entered, there was no one in the front part of the store, but Louise saw a figure through the service window at the rear of the store. Louise testified that she believed she was to walk straight from the front door, down the aisle, and up to the service window to transact her business. Louise walked down the aisle approaching the service window, but before she reached the window, she stepped, and "there was no floor there." Louise fell into the open staircase and incurred multiple injuries to her right shoulder, arm, pelvis, and coccyx.
Christopher Mayhorn, Ph.D. ("Mayhorn"), a professor of human factors and ergonomics at North Carolina State University, testified as to the physical structure of the Special Flowers building. Mayhorn visited the Special Flowers building to prepare for his testimony, but the building had been "gutted" after a fire occurred some time after Louise's fall. However, Mayhorn was able to review photographs of Special Flowers as it appeared on the day of Louise's fall. Mayhorn opined that the effect of the aisle, the dark stairs, and the service window was to lead a person down the aisle and straight ahead to the service window. Mayhorn testified that the staircase was "inherently dangerous" because it was not visible.
At trial, evidence established that similar incidents involving the Special Flowers staircase had occurred prior to Louise's fall on 26 August 2005. In 2002, William Hilliard entered the front of the store and walked toward the store's service window because no one was in the front to wait on him. He approached the service window, and then "stepped off and there was nothing there." Hilliard fell down three or four steps and sustained a few bruises from the fall. Additionally, Gurganus admitted that in a recorded statement taken shortly after Louise's fall, he stated that "[i]f I am in the back of the shop and [people] will come in the front door and they are looking straight up, they don't look down and see where they are going and they will walk down the stair steps, bam!"
At the close of Plaintiffs' evidence, Clements made a motion for directed verdict. This motion was denied. Clements renewed its motion for directed verdict at the close of its evidence, and this motion was granted.
On 6 May 2008, judgment was entered granting Clements' motion for directed verdict and dismissing all claims against Clements with prejudice. The trial court entered judgment in Plaintiffs' favor against the defaulted parties, Special Flowers and Gurganus, jointly and severally for $350,000 for Louise's claim and $50,000 for Austin's claim. Plaintiffs appeal from the trial court's judgment granting Clements' motion for directed verdict.

II. Landlord's Liability to Third Parties
"The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." Davis v. Dennis Lilly Co., 330 N.C. 314, 322-23, 411 S.E.2d 133, 138 (1991) (citing Kelly v. Int'l Harvester Co., 278 N.C. 153, 179 S.E.2d 396 (1971)).
The evidence should be considered in the light most favorable to the nonmovant, and the nonmovant is to be given the benefit of all reasonable inferences from the evidence. [Wallace v. Evans, 60 N.C. App. 145, 146, 298 S.E.2d 193, 194 (1982)]. "If there is more than a scintilla of evidence supporting each element of the nonmovant's case, the motion for directed verdict should be denied." Snead v. Holloman, 101 N.C. App. 462, 464, 400 S.E.2d 91, 92 (1991). Thus, where a defendant pleads an affirmative defense such as contributory negligence, "a motion for directed verdict is properly granted against the defendant where the defendant fails to present more than a scintilla of evidence in support of each element of his defense." Id.

Whisnant v. Herrera, 166 N.C. App. 719, 722, 603 S.E.2d 847, 850 (2004).
To establish a prima facie case of actionable negligence, a plaintiff must allege facts showing: (1) defendant owed plaintiff a duty of reasonable care; (2) defendant breached that duty; (3) defendant's breach was an actual and proximate cause of plaintiff's injury; and (4) plaintiff suffered damages as the result of defendant's breach.
Winters v. Lee, 115 N.C. App. 692, 694, 446 S.E.2d 123, 124, disc. review denied, 338 N.C. 671, 453 S.E.2d 186 (1994). The key issue in the present case is whether Clements, as the landlord of the premises, owed a duty to Plaintiffs.
Although the written lease between Special Flowers and Clements expired in 2002, the parties continued in a leasehold relationship after the expiration of the lease.
[W]hen a tenant under a lease for a fixed term of one year, or more, holds over after the end of the term the lessor may eject him or recognize him as a tenant. Murrill v. Palmer, 164 N.C. 50, 80 S.E. 55 [(1913)]. If the lessor elects to treat him as a tenant, a new tenancy relationship is created as of the end of the former term. This is, by presumption of law, a tenancy from year to year, the terms of which are the same as those of the former lease in so far as they are applicable, in the absence of a new contract between them or of other circumstances rebutting such presumption. Williams v. King, 247 N.C. 581, 101 S.E.2d 308 [(1958)]; Murrill v. Palmer, supra; Holton v. Andrews, 151 N.C. 340, 66 S.E. 212 [(1909)]; Harty v. Harris, 120 N.C. 408, 27 S.E. 90 [(1897)].
Kearney v. Hare, 265 N.C. 570, 573, 144 S.E.2d 636, 638-39 (1965).
Generally, third parties who are injured by some defective condition on leased premises may have recourse against the lessee, but not against the lessor. Wilson v. Dowtin, 215 N.C. 547, 550, 2 S.E.2d 576, 577 (1939). "The liability may, however, be extended to the landlord or owner[:] (a) [w]hen he contracts to repair; (b) where he knowingly demises the premises in a ruinous condition or in a state of nuisance; [or] (c) where he authorizes a wrong." Id.
In Wilson, "the plaintiff fell into an open unprotected stair[]well in the storage room of a building owned by the defendant Sherrill and in possession of the defendant Dowtin, as lessee." Id. at 548, 2 S.E.2d at 576. Approximately nine months into Dowtin's lease, Dowtin requested that Sherrill expand the building, which included construction of a stairway from the outside of the rear of the building leading into the basement. Id. Part of the stairwell was covered, and there was no railing or other protective device around the opening to the stairwell. Id. at 548-49, 2 S.E.2d at 576-77. The Wilson Court held that the plaintiff could not establish any negligence since the stairway was clearly located in a part of the building not open to the public, and thus, the defendant could not have foreseen that an invitee to the premises might be injured in that area.[1] Thus, the Wilson Court did not reach the issue of whether the landlord owed the plaintiff a duty.
Plaintiffs contend that even though the Wilson Court did not reach the issue of the landlord's duty to the plaintiff, the Court's opinion implies that there was such a duty. Specifically, Plaintiffs argue that
[i]f the Supreme Court felt that the law of the land was that there was no duty on behalf of the Landlord in this instance, the Court could have easily dispatched the case on that basis, but instead, the Court cited favorably the exception to the rule which does set out a duty, and then proceeded to decide the case on the basis of an additional finding of contributory negligence on the part of the Plaintiff as a matter of law. To find contributory negligence as the Court did in Wilson, there must have been a duty on behalf of the Defendant to begin with.
We are not persuaded. Contrary to Plaintiffs' argument, Wilson does not suggest that in the absence of the plaintiff's contributory negligence, the landlord would have owed a duty in that circumstance. The Court's holding merely suggests that should any of the three exceptions to a landlord's limited liability have applied, then the defendant would have owed a duty. However, because of its holding on the negligence issue, the Court did not reach the issue of whether any of the exceptions applied to the landlord.
Thus, in the case at bar, we must consider whether the evidence was sufficient to establish any of the exceptions to the rule that a landlord generally owes no duty of care to visitors to leased property. See id. Plaintiffs argue that Clements knowingly leased the premises in a "ruinous condition or state of nuisance."[2]
In Childress v. Lawrence, 220 N.C. 195, 16 S.E.2d 842 (1941), part of the roof of a leased structure protruded out over a sidewalk, and the plaintiff struck his head while walking along the sidewalk. In Childress, the Court held there was sufficient evidence that the landlord had either "knowingly [demised the] premises in a ruinous condition or in a state of nuisance," or "authorize[d] a wrong[,]" to submit the case to the jury. Id. at 197, 16 S.E.2d at 843. Unlike in the present case, the danger at issue in Childress was inherent to the leased structure. See id. In the present case, the danger of the staircase was not inherent to the structure of the leased premises. Rather, the danger presented by the staircase arose solely from the manner in which Special Flowers organized and used the staircase and its surrounding area.
The undisputed evidence establishes that the danger of the staircase existed because (1) it was immediately under a service window to which patrons' attention was naturally directed as they walked down the aisle leading straight to that window; (2) it was carpeted with dark carpet; (3) there were no signs or arrows or other indicators that there was a staircase in the area; and (4) the rail going down the right side of the staircase was hidden by a partial wall in front of the rail, and thus, the rail was not visible to an approaching patron. Gurganus testified that he would sometimes pull a piece of furniture across the top of the staircase to block the entrance, and he also sometimes blocked the entrance with a chain. However, neither of these safeguards were in place on the day of Louise's fall. Thus, we conclude that the premises as leased by Clements were not in a "ruinous condition," but rather, Special Flowers was arranged in a manner that made the staircase dangerous.
Moreover, in Boyer v. Agapion, 46 N.C. App. 45, 46, 264 S.E.2d 364, 365 (1980), this Court held that a landlord is not liable for injuries suffered by third parties on the premises unless the landlord knows of the dangerous condition, and the landlord further knows that the tenant does not know of the condition. In Boyer, the plaintiff "injured his right leg when he stepped on the bottom porch step of the leased residence, and the step broke, causing plaintiff to fall." Id. The plaintiff brought action against both the landlord and the tenant of the premises. Id. The trial court granted the defendants' motion for summary judgment, and the plaintiff appealed from this judgment with respect to the landlord. On appeal, our Court agreed with the analysis presented by the Restatement (Second) of Property s. 17.1 which provides:
A landlord is subject to liability to persons on the leased property only if,
(a) the tenant does not know or have reason to know of the condition or the risk involved; and
(b) the landlord knows or has reason to know of the condition, realizes or should realize the risk involved, and has reason to expect that the tenant will not discover the condition or realize the risk.
Boyer, 46 N.C. App. at 51, 264 S.E.2d at 367-68. This Court affirmed the trial court's decision granting the landlord's motion for summary judgment after finding that the lessee "had the opportunity to be cognizant of the danger presented by the step and that the lessor defendants had reason to expect that [the lessee] would discover the condition and realize the risk." Id.
As in Boyer, the tenants in the present case knew of the danger posed by the staircase. William Hilliard and other patrons of Special Flowers had been involved in similar accidents with the staircase prior to Louise's fall. Special Flowers' knowledge of the danger posed by the staircase was also evidenced by the piece of furniture and chain Gurganus sometimes used to block the entrance to the staircase. Gurganus testified that the Clements were his "best friends." Given their close, personal relationship, the Clements certainly had reason to expect that their tenants realized the risk posed by the staircase. Accordingly, the trial court's judgment granting Clements' motion for directed verdict is affirmed.
AFFIRMED.
Judges BRYANT and GEER concur.
Report per Rule 30(e).
NOTES
[1] Since Wilson, the distinction between licensees and invitees has been abolished, and North Carolina law imposes a standard of reasonable care to all lawful visitors. Nelson v. Freeland, 349 N.C. 615, 631, 507 S.E.2d 882, 892 (1998).
[2] Plaintiffs do not argue the other exceptions to a landlord's limited liability, and thus, we do not address them.