ARTHUR ULLIAN *vs.* JAMES A. CULLEN & another.[1]

Middlesex.    February 17, 1978. — March 9, 1978.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Watercourse. Drain.*

In a suit in equity by the owner of certain property to restrain the owners of adjoining land from obstructing a watercourse, subsidiary findings by a master warranted a finding that the channels on the plaintiff's land were natural watercourses, rather than artificial drainage ditches. [94–96]

BILL IN EQUITY filed in the Superior Court on September 29, 1972.

Following the decision of this court in 3 Mass. App. Ct. 159 (1975), the case was heard by *Leen, J.,* on a master's report.

*Margaret C. Mahoney* for the defendants.

*George M. Ford* for the plaintiff.

HALE, C.J. When this case was previously before us (*Ullian* v. *Cullen,* 3 Mass. App. Ct. 159 [1975]), we reversed the judgment and remanded the case to the Superior Court for further findings by a judge or by the master. A Superior Court judge set aside the general findings made by the master and recommitted the action to him with specific instructions to make general and subsidiary findings on specified questions. The master held further hearings pursuant to the order of recommittal and filed a report. No objections were made to that report, and upon motion of the plaintiff it was adopted. Judgment was entered granting injunctive relief, from which the defendants have appealed. We confine our considera-

---

[1] Helen M. Cullen.

tion to the sole issue raised by the defendant's brief; namely, whether the finding that the channels on the plaintiff's land were natural watercourses was warranted by the subsidiary findings of the master.

As required by the orders of reference and recommittal, the master based his general findings on the subsidiary findings made in his earlier report as well as those made in his report after recommittal. It is open to us, as it was to the trial judge, to draw our own conclusions from those findings. *Corrigan* v. *O'Brien,* 353 Mass. 341, 346 (1967). *Jones* v. *Gingras,* 3 Mass. App. Ct. 393, 395–396 (1975). It now appears from those findings that water from rain and melting snow runs off as surface water from a residential area to the north onto the plaintiff's land and passes (no doubt augmented by rain and snow falling on the plaintiff's land) over that land to some point on the westerly side of the plaintiff's land, where there is a depression. The water then flows through and from that depression into a natural channel, with banks of varying width and depth, which continues for about 100 feet to a pool at the northerly side of a concrete culvert, two feet in diameter. Surface water from the same source also enters another natural channel on the easterly side of the plaintiff's property. This channel also runs to the culvert. However, part of this channel has been replaced with a fifteen inch drain pipe which is covered over up to its point of emergence near the culvert. That culvert lies under the roadbed of an abandoned railroad spur wholly on the land of the defendants, and has been in place since at least as far back as World War I. The purpose of the culvert was to permit water from the channels to continue its downward flow under the railroad bed toward the Aberjona River. The defendants' land extends from the northerly side of the railroad bed southerly to the river. Prior to being filled, that part of the defendants' land was swampy.

On December 31, 1959, the defendants leased the land south of the railroad bed to the town of Winchester for

use as a sanitary landfill dump. In 1960 during the course of the landfill operation a bulldozer operator employed by the town called the male defendant's attention to the culvert and was instructed by the defendant to bury it. The southerly end of the culvert was then covered with fill. This blocking of the culvert substantially restricted the flow of water through it, and as a result water from the channels on the plaintiff's land backed up and flooded part of that land.

The master found that the two channels on the plaintiff's land existed naturally and were not (except for the later piping of the easterly channel) constructed by man. The judge also concluded, "that the culvert and the swampy area of the defendants' land were originally part of a longer natural watercourse composed of the culvert, the swampy area (both on the defendants' land) and the drainage system on the plaintiff's land."

On the master's new findings it can now be said that the obstructed channel is not an artificial ditch for carrying off surface water and draining the land through which it passed. Rather, it appears that for a long period of time surface water from the upper areas of the drainage slope has gathered and flowed, unassisted by man, in a generally southerly direction in two regular, natural channels with banks and sides to the point where the defendants have obstructed its further flow. The characteristics of the channels found to exist here meet the basic criteria for a natural watercourse. See *Ullian* v. *Cullen*, 3 Mass. App. Ct. at 162–164. The facts that the source of the water in the channels is entirely from surface water drainage, that one of the channels is now partly enclosed by pipes installed by man, and that the stream might be small or that the flow of water in the channels might not be continuous, are not controlling. *Fitzgerald* v. *Fortier*, 292 Mass. 268, 271–274 (1935). The stream must, however, be "something more than a mere surface drainage over the entire face of a tract of land, occasioned by unusual freshets or other extraordinary causes." *Id.* at

274. The existence of a natural watercourse is a question of fact. *Ibid.* See *Ullian* v. *Cullen,* 3 Mass. App. Ct. at 162.

We conclude that on the facts found the channels in the present case are not artificial ditches into which surface drainage from over the entire face of the tract of land is funnelled but rather are channels formed by the natural flow of surface waters in such a way that over the course of the years natural watercourses have evolved which have well defined existences. We hold that the findings of the master and the conclusions of the judge based on the subsidiary findings of the master that the two streams or channels on the plaintiff's land which merge and continue to flow onto the defendants' land are natural watercourses were warranted.

*Judgment affirmed.*