A. W. DODD AND COMPANY *vs*. D. CHESTER TARR.

SAME *vs*. ELIZABETH M. BURNHAM.

Essex.　November 18, 1924. — January 30, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Drain*, Private.　*Easement*, Of drainage.　*License*.　*Equity Jurisdiction*, Laches, Estoppel.

In a suit in equity by a corporation, the owner of certain real estate in Gloucester bordering the sea across which passed a private drain, to enjoin the defendant "from emptying waste" through the property of the plaintiff, the following facts appeared: The defendant never had obtained express permission to convey drainage through or on the plaintiff's property.　Previous to 1874 a brook, having its rise in swamp land and fed by springs, had run southerly in an open channel down a public way, upon which land of the defendant abutted, and under another way, which crossed the first, into the sea.　A sidewalk was built over the brook in about 1874, and at the point of intersection with the second way the municipality built a catch basin.　A predecessor in title to the plaintiff in 1884 owned the property by the sea easterly of the course of the way down which the brook ran.　He also owned property at the northerly end of the way down which the brook ran, which he had connected with the brook by a private drain.　In that year he had given to the city by deed a revocable license to turn the drain across his land by the sea "upon the express condition and consideration" that the city would construct a catch basin at the way to prevent material from washing into his dock.　The city did not perform that work and, in 1888, interested citizens made necessary contributions and the work was done under the direction of the chairman of the board of health.　The deed of license to the city permitted it "at all reasonable times, to enter upon said land for the purpose of repairing said drain and to repair it."　It did not appear that any such entry ever had been made by the city.　In 1889, the plaintiff's predecessor in title conveyed to the city his land at the head of the way down which the covered brook then ran, the deed stating, "A right is granted to said City to have and maintain the drain as it now stands and discharges on my land" by the sea.　In 1900, the defendant bought his land abutting on the first way and it was connected with the drain.　*Held*, that

(1) The city never having exercised the license given it by the deed of 1884, it was unnecessary to decide whether, if the city had done the work and maintained the drain and no notice of revocation had been given, the defendant could rely on it as a defence;

(2) The defendant was not entitled as a licensee to use the drain across the plaintiff's land;

(3) The easement given to the city by the deed of 1889 could not be enlarged by construction to include the land of the defendant as part of the dominant estate;

(4) The defendant had no right to use the drain across the plaintiff's land.

At the hearing of the suit above described, there was no evidence on the issues, whether the plaintiff's predecessor in title knew that the land of the defendant was connected with the drain or when the plaintiff first ascertained that fact. Less than two months after making a formal demand on the defendant that he either pay rent for the use of the drain or discontinue its use, the suit was brought. *Held*, that

(1) Knowledge of the facts on the part of the plaintiff or its predecessor in title not being shown, it was not estopped to maintain the suit;

(2) No laches barring the suit were shown.

Two BILLS IN EQUITY, filed in the Superior Court on January 8, 1917, seeking to enjoin the defendants, respectively, from emptying waste by means of a drain running through property of the plaintiff.

In the Superior Court, the suits were referred to the same master. From the master's report it appeared that the controversy related to a drain running down Chestnut Street in Gloucester from Prospect Street to Main Street, thence along Pearce Street and across land of the plaintiff to its dock.

Chestnut Street runs southerly from Prospect Street on the north to Main Street on the south. Westerly of Chestnut Street and parallel to it, Elm Street runs southerly from Prospect Street. Nearly opposite the intersection of Chestnut Street and Main Street, Pearce Street runs from Main Street in a southeasterly direction.

The property of the plaintiff was on Pearce Street some distance south of Main Street, and included upland, docks, and flats. The property of the defendant Tarr was on the west side of Chestnut Street nearly midway between Prospect Street and Main Street. The property of the defendant Burnham was at the southwesterly corner of Prospect Street and Elm Street. The "Huntress Home" property, conveyed by Andrew W. Dodd to the city of Gloucester in 1889, as described in the opinion, was on the northerly side of Prospect Street and easterly of the intersection of Chestnut Street with Prospect Street.

In 1889 Andrew W. Dodd was the owner of at least a

large interest in the upland, dock and wharf property east of Pearce Street, afterwards conveyed to the plaintiff on its organization as a Maine corporation in 1907.

The defendants claimed rights to use the drain running down Chestnut Street and emptying through the plaintiff's land into its dock.

The master found: "There was no evidence whether said Andrew W. Dodd did or did not know the fact that the defendant's premises were connected with said drain running down Chestnut Street, and finally through the property of the plaintiff corporation, and into a dock adjoining the same owned by the plaintiff. . . . There was no evidence as to when the plaintiff first ascertained the fact that the defendant's premises drained into said drain down Chestnut Street and thence through the property of the plaintiff corporation into the dock adjoining the same and owned by the plaintiff. No claim was ever made against the defendant by reason of the defendant's sewage or drainage flowing as heretofore described, until November, 1916." On November 29, 1916, the plaintiff caused to be served on each defendant a notice stating "in substance that a drain from the defendant's premises was connected with the drain which emptied through the property of the plaintiff, and stated specifically that unless rental 'for the past year amounting to twelve dollars is paid to said A. W. Dodd & Co., Inc. before Tuesday, the 5th day of December, 1916, or your drain is discontinued ' before that date, proceedings for injunction would be instituted in the Superior Court." No attention being paid by either defendant to such notice, these suits were brought.

Other material facts found by the master are described in the opinion. The suits were heard by *Walsh,* J. The plaintiff asked for the following rulings:

"1. The master's report discloses no prescriptive right in the defendant to empty waste or sewage through or on to the plaintiff's property.

"2. The master's report discloses no right, permission, license or authority in the defendant to empty waste or sewage on or through the plaintiff's property.

"3. The master's report discloses no public sewage in the city of Gloucester.

"4. There is nothing in the master's report to indicate that the drain in question was a private drain laid under the provisions of any of the statutes of Massachusetts.

"5. The master's report discloses no riparian rights in the defendant to empty waste or sewage in any water course flowing down Chestnut Street or through the plaintiff's property.

"6. The right granted to the city of Gloucester by Andrew W. Dodd, on January 20, 1889, ' to have and maintain the drain as it now stands and discharges on my land and wharf,' was only in connection with the 'Huntress Home' and gave the defendant no right to connect his property therewith.

"7. If there was an ancient water course flowing down Chestnut Street in said Gloucester, which was later diverted by the city on to the plaintiff's land, this would give the defendant no right to empty waste or sewage into same and on and through the property of the plaintiff.

"8. There was no common drain or sewer flowing through or onto the property of the plaintiff into which the defendant had any right to empty waste or sewage.

"9. If any other person or persons were emptying waste or sewage on or through the property of the plaintiff, this would not furnish any right in the defendant to do so.

"10. On the master's report, judgment must be for the plaintiff.

"11. On the master's report, an injunction should issue restraining the defendant from emptying sewage or waste through or onto the plaintiff's property."

The judge ruled in each suit " that the plaintiff is not entitled to the relief prayed for in its bill, and the rulings requested by plaintiff in so far as inconsistent with my ruling above are denied." By order of the judge, there were entered in each suit an interlocutory decree confirming the master's report and a final decree dismissing the bill. Each plaintiff appealed from the final decrees and "from the denial by the court of the plaintiff's request for rulings inconsistent with said final decree."

*C. B. Terry*, for the plaintiff.

*E. S. Abbott*, for the defendants.

BRALEY, J.   The city of Gloucester, the domicil of the parties, has never established a system of sewerage.   But prior to 1874, an open brook, having its rise in swampy land and fed by springs, ran from Prospect Street on the north, which was laid out in 1833 when Gloucester was a town, down the westerly side of Chestnut Street, laid out in 1850 by the selectmen, on the westerly side of which the premises of the defendant Tarr abut.   It flowed for many years in an open channel to within a short distance of Main Street on the south where, crossing under the street, it passed over land owned since February 16, 1907, by the plaintiff, to the sea.   A sidewalk, at some time not shown by the record, was built over the brook for substantially its entire length from Prospect Street to the northerly side of Main Street, and the city, at the corner of Main and Chestnut streets, built a catch basin and connected it with the brook.   Andrew W. Dodd, one of the plaintiffs' predecessors in title, owned and occupied premises on the north side of Prospect Street as a home from 1881 to January 4, 1889, when he conveyed the property to the city.   It is referred to in the master's report as the " Huntress Home."   Dodd, previous to 1884, laid a pipe drain under Prospect Street and over private land to Chestnut Street where it was connected with the covered drain into which waste and sewage were discharged.   The defendant Tarr, whose premises are connected with the drain, acquired title March 15, 1900.   The defendant Burnham has owned her property since 1897, which abuts on the northerly side of Prospect Street and by intermediate drains has also been connected with the Chestnut Street drain. The estates of Dodd, Tarr, and Burnham are on the record the only estates which have used the drain.   The defendants, however, have acquired no rights by prescription and, unless they have been licensed, or have an easement by grant, they are trespassers.   *Bigelow Carpet Co.* v. *Wiggin,* 209 Mass. 542.

May 16, 1884, Dodd and one Charles H. Parsons, the plaintiffs' predecessors in title and owners of seven ninths of

the land and dock, by an indenture under seal with the city licensed, permitted and empowered the municipality to construct and maintain through their land on the easterly side of Pearce Street, a drain which now runs easterly from said street, with a clause of revocation, "to give said City six months' notice of their intention to revoke this license and permission." The city covenanted and agreed to construct within a reasonable time, a catch basin in Pearce Street at the head of the drain in front of the licensors' land, "to be so constructed as to prevent gravel, dirt, sand, and other like materials from washing into the dock . . . through said drain, it being understood and agreed, by and between said parties . . . that this license and permission is granted upon the express condition and consideration that said city shall fully perform its covenant and agreement as above set forth." The city, however, never acted, and it was not until 1888 when, the cost being paid by private subscription to which Dodd contributed, the natural course of the brook or drain which was "then carrying some sewage from the Huntress Home" was so changed and diverted from its former course at the corner of Main and Chestnut streets, as to run underneath Pearce Street which opened from the southerly side of Main Street, and then turned at a right angle easterly and crossed the land in question, discharging into the dock. The course thereafter of the drain below the northerly line of Main Street "was entirely beneath the public streets until it entered the plaintiff's land."

It was contended by the defendants before the master that the work of diverting the brook was done by Dodd. But, while Dodd was interested and " had underwritten, as it might perhaps be called, the financing of the work," it was done under the direction of the chairman of the board of health who solicited and obtained the money from those who lived in the vicinity and, because of odors from the sewage, were interested in the relocation. While the city, under the terms of the indenture, is also permitted " at all reasonable times, to enter upon said land for purpose of repairing said drain and to repair it," there is no finding that any entry has been made. The license never has been

exercised by the city, and it is unnecessary to decide whether, if the city had done the work and maintained the drain, and no notice of revocation having been given, the defendants could rely on it as a defence. *Ruggles* v. *Lesure*, 24 Pick. 187. *Giles* v. *Simonds*, 15 Gray, 441. *Smith* v. *Gloucester*, 201 Mass. 329. It is manifest on the foregoing review of essential facts found by the master, that the defendants are not licensees.

The deed from Dodd to the city in 1889 contains this language: "A right is granted to said City to have and maintain the drain as it now stands and discharges on my land and wharf," and the master finds that "the drain as it now stands" is the drain built in 1888, and that the "land and wharf" are the property of the plaintiff. It is contended by the defendants that they are within its terms. But, even if the grant is broadly phrased with no suggestion of any limitation of time, or restriction as to the volume of sewage, the easement was appurtenant to the estate conveyed. It cannot be enlarged by construction to include the lands of the defendants. *Barnes* v. *Lloyd*, 112 Mass. 224. *George* v. *Cox*, 114 Mass. 382. *Naumkeag Steam Cotton Co.* v. *American Glue Co.* 244 Mass. 506.

The defendants finally urge that the plaintiff ought not to be permitted to maintain the suit because of its unreasonable delay and acquiescence in what had been done. But the defendants are not found to have relied on any representations, or inaction with knowledge of the facts even on the part of former owners who are not shown to have been aware of the defendants' use of the drain, and the plaintiff apparently did not discover it until November, 1916, when it demanded rental, which, if not paid, "your drain is discontinued," and the bill was filed January 8, 1917. We therefore are unable to discover any evidence of equitable estoppel, or of laches which defeats relief. *Sawyer* v. *Cook*, 188 Mass. 163. *Attorney General* v. *Boston & Albany Railroad*, 246 Mass. 292, 298, 299. *Seretto* v. *Schell*, 247 Mass. 173, 177.

The decree dismissing the bill is reversed and the case is to stand for further proceedings in the trial court.

*Ordered accordingly.*