GIUSEPPE BELCASTRO & another *vs.* GEORGE S. NORRIS.

Middlesex.    March 7, 1927. — October 21, 1927.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Water Rights. Watercourse. Drain. Easement. Damages,* In suit in equity, Nominal.

One, who owned land subject to the servitude of permitting water to flow over it to an adjoining brook from a boundary ditch between his land and adjoining land into which water drained from the adjoining land, may maintain a suit in equity to restrain the adjoining owner from maintaining, upon his land and connecting with the boundary ditch at a point opposite a ditch which ran through the plaintiff's land to the brook, additional ditches which caused such an increase of water flowing through the plaintiff's land and such an increase in the rapidity of its flow that the plaintiff's land and crops were damaged.

The plaintiff in the suit above described was not precluded from the relief sought by the fact, found by the master, that, if he had cleaned his ditch thoroughly, the damage to his land would have been less, and that, if he had lowered the bottom of the brook, such damage would have been averted entirely.

If, on the evidence at the hearing of the suit above described, the master found that the new ditches resulted in damage to the plaintiff's land but he was unable to find the amount of such damage, the plaintiff was entitled to the injunction he sought and to nominal damages.

BILL IN EQUITY, filed in the Superior Court on December, 12, 1917, and afterwards amended, seeking the relief stated in the opinion.

In the Superior Court, the suit was referred to a master. As to the defendant's contentions referred to in the opinion, that acts of the plaintiffs precluded them from relief, the master found as follows:

"It is the contention of the defendant not only that the plaintiffs did not properly clean their ditches, but also that had they done so they would have sustained no damage to their crops through the overflowing of . . . [the ditch across their land], and also that the amount of water coming from the defendant's ditches was not beyond or in excess of the capacity of the plaintiffs' ditches if properly cared for, and in support of this claim they introduced a number of witnesses of high repute, extensive experience and unquestioned integrity all of whom expressed their opinions to that effect. I prefer, however, to adopt the view taken on this question by the board of sewer and water commissioners of the town of Lexington as embodied in the report on 'Lowering Brooks' published by the town in 1913 and introduced in evidence by the defendant" . . . [here follows a quotation from the report]. "I therefore find that had the plaintiffs taken proper care of their ditches and cleaned them thoroughly and adequately, their loss sustained through flooding of the middle piece and the twenty-five foot tract on the northwesterly side of ditch 2 would undoubtedly have been less. I cannot find affirmatively that such loss and damage would thus have been entirely averted. If, however, in addition to cleaning their ditches, the bottom of the main brook were lowered for a considerable part of its length, in

accordance with the recommendations of the commission, above quoted, then I find that the plaintiffs would have no further trouble through flooding of any portion of their farm by water conveyed thither through the new channels opened up by the defendant in the year 1915."

Other material facts are stated in the opinion. Exceptions by the plaintiff to the master's report were heard by *Bishop,* J., by whose order there were entered an interlocutory decree overruling the exceptions and confirming the report, and a final decree dismissing the bill. The plaintiffs appealed.

The case was submitted on briefs.

*F. Ramacorti & J. M. Russell,* for the plaintiffs.

*E. A. Bayley,* for the defendant.

CARROLL, J. The plaintiffs and the defendant are owners of adjoining tracts of land in Lexington. A boundary ditch separates the two tracts and from this ditch runs another ditch carrying the drainage across the plaintiffs' land to South Branch of Vine Brook. The land of the plaintiffs and the defendant was drained for more than twenty years by a series of ditches; some of them were natural watercourses. In the year 1915 the defendant, in order to drain his land, excavated a new ditch connecting with the boundary ditch between the land of the plaintiffs and the defendant at a point opposite the ditch that crossed the plaintiffs' land. The defendant also constructed an auxiliary ditch, designated on the plan as ditch H. The master found that although the construction of the new ditch and the auxiliary ditch tapped no new source of supply and drained no new territory, yet the excavation resulted in a greater flow of water into the ditch on the plaintiffs' land; and that the plaintiffs' land was damaged in part by this increased amount of water and by the increased rapidity of its flow. The plaintiffs asked for damages and relief against the defendant's using the new ditch and the auxiliary ditch. The bill was dismissed in the Superior Court.

A landowner has the right to improve his land and is not responsible to his neighbor for any damage caused by the natural flow of surface water incident to such improvement, *Gannon* v. *Hargadon,* 10 Allen, 106; but the landowner cannot

collect surface water into a ditch or artificial channel and discharge that water on his neighbor's land. *Manning* v. *Woodlawn Cemetery Corp.* 245 Mass. 250. The plaintiffs' land was subject to the servitude of water running through the ditch on their land from the ditches already constructed but it could not be subjected to the servitude of an additional flow of water resulting in damage to their property caused by the construction of new and auxiliary ditches. As stated by Field, J., in *Jackman* v. *Arlington Mills,* 137 Mass. 277, 283, 284, a landowner "has the right to collect the surface water and the natural drainage of his land into an artificial stream, and discharge it into a natural watercourse on his own land, if the watercourse is the natural outlet of the waters thus collected . . . provided this is done in the reasonable use of his own land, and that the discharge is not beyond the natural capacity of the watercourse, and the land of a riparian owner is not thereby overflowed, and materially injured"; and "one riparian landowner has no right to turn into a natural watercourse another stream, or surface water which does not naturally flow into it, in such quantities as to so increase the volume of water in the watercourse." The new ditches on the defendant's land caused destruction and damage to the plaintiffs' crops by reason of the "increased amount of water reaching" the ditch on the plaintiffs' land, "and the increased rapidity of its conveyance thither at the time of heavy rains." Even if the defendant could drain his land by means of additional ditches entering the watercourse, he could not do this if it increased the flow of water to the injury of the plaintiffs. Therefore the plaintiffs are entitled to relief in equity.

The defendant argues that the plaintiffs ask for relief against the additional surface water discharged on their land; that the evidence shows that the water gathered in the new ditches was not surface water but was percolating water. We cannot agree with this contention. Assuming, but not deciding, that this question is now open to the defendant, (see *Donohue* v. *White,* 247 Mass. 479, 482,) as we construe the master's report it was found that surface water flowed into one of the new ditches of the defendant.

While the master found that the construction of the new ditches resulted in damage to the plaintiffs' land, the amount thereof could not be determined: in such circumstances the plaintiffs are entitled to nominal damages. *Tramonte* v. *Colarusso*, 256 Mass. 299, 301, 302, and cases cited. *White* v. *Chapin*, 12 Allen, 516, 520.

We find nothing in the acts of the plaintiffs which precludes them from relief in this suit. The rule precluding a plaintiff from invoking the aid of a court of equity by reason of his own conduct, as shown in *Balcom* v. *Normile*, 255 Mass. 186, *Howe* v. *Chmielinski*, 237 Mass. 532, and similar cases, has no application to the facts found in this case.

It follows that the decree is to be reversed and a decree entered for the plaintiffs for nominal damages, and restraining the defendant from using the new ditches referred to.

*Ordered accordingly.*