JOHN McGOWEN & another *vs.* GEORGE HENRY CARR
& another.

Berkshire.   September 16, 1930. — October 2, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Watercourse. Equity Jurisdiction,* To enjoin obstruction of natural
watercourse. *Deed.*

From findings by a master in a suit in equity between adjoining land-
owners to enjoin the defendant from obstructing a drain or water-
course running from the plaintiff's across the defendant's land, it
appeared that both parcels formerly were owned by one person;
that, when the defendant acquired title, there had been for at least
twenty years an open ditch across land, afterwards the plaintiff's,
which connected with and discharged water into a similar ditch across
the defendant's land; that these ditches carried off overflow from
springs on the plaintiff's land and on land of a third party; that
the defendant placed an iron pipe in the ditch on his land to take the
flow of the water; that later he removed the iron pipe and dug a new
ditch which was not deep enough to carry the flow; and that for
that reason the water "backed up on the" land of the plaintiff. The
deeds to the parties made no reference to any easements or water rights.
A final decree was entered directing the defendant to restore the ditch
or drain as it existed before the time it was removed or obstructed
by the defendant, or, in the alternative, to construct a substitute

system of drainage, enjoining the defendant from obstructing the plaintiff's right of flowage through the ditch or channel, and awarding damages. The defendant appealed. *Held,* that

(1) The master's findings meant that the so called ditch was a natural watercourse that was in existence when the defendant became owner of his land; it could not be said that the ditch was artificial, designed to carry surface drainage;

(2) As the ditch was a natural watercourse, the defendant had no right to obstruct it and could be called upon to make good loss suffered by the plaintiff through such obstruction;

(3) It was not essential that reference should have been made to the watercourse in the conveyance to the plaintiff;

(4) The decree was affirmed.

BILL IN EQUITY, filed in the Superior Court on May 31, 1928, and afterwards amended, described in the opinion.

The suit was referred to a master. Material facts found by the master are stated in the opinion. By order of *Dillon,* J., there were entered an interlocutory decree confirming the master's report and a final decree ordering and decreeing as follows:

"1. That the plaintiffs have a right to drain the parcels of real estate owned by them . . . over the parcel or parcels of real estate owned by the defendants. . . .

"2. That the defendants are ordered forthwith to restore the ditches or drains, draining said plaintiffs' premises, through and over the defendants said premises, as they existed prior to the time that they were removed or obstructed by the defendants.

"3. Or in the alternative, the defendants are ordered forthwith to construct such other system of drainage by pipes or otherwise, that would cause the plaintiffs' premises to be drained as conditions existed when the plaintiffs purchased their premises.

"4. That the defendants, or either of them, their agents, assigns, or those claiming under them are permanently enjoined from interfering with or obstructing the right of flowage of water, through the ditch or ditches, or channel or channels passing through, and/or over the premises of the plaintiffs and defendants . . . as they existed when the defendants purchased their premises.

"5. That the defendants are ordered forthwith to re-

move from their said premises any obstruction to said drainage flow of water existing on defendants' premises.

"6. That the defendants are ordered to pay the plaintiffs damages in the sum of $50, with interest from the date of filing this bill in equity, and also costs, in the sum of $26.45 taxed as at common law, and that execution should issue therefor."

The defendants appealed.

*C. W. Faulkner*, for the defendants.

*J. M. Rosenthal*, for the plaintiffs.

Carroll, J.  This suit in equity is to restrain the defendants from obstructing a drain or watercourse, and for damages caused to the plaintiffs' land by the acts of the defendants. The master's report was confirmed by an interlocutory decree; a final decree was entered directing the defendants to remove from their premises "any obstruction to said drainage flow of water existing on defendants' premises" and ordering them to pay the plaintiffs damages. The defendants appealed from the final decree. There was no appeal from the interlocutory decree.

The master found that the land of the plaintiffs and of the defendants formerly belonged to one Booth. The plaintiffs' tract was conveyed to them on August 13, 1925. It is north of and adjoins the defendants' land. To the north of the plaintiffs' land is the land of one Ploss. When the defendants acquired title there was an open ditch across the plaintiffs' land "which connected with and discharged its waters into a similar ditch across the Carr property and . . . such ditch had been there for at least twenty years." It was found that in the year 1900, Booth deepened "the Channel"; that it was "a well defined channel"; that "there were at least two springs on the McGowen land or the Ploss land . . . One of these springs was piped to a farm barn on the south, just south of this spring was another spring which used to catch the overflow of the first"; that "The overflow from these springs passed down through the ditch over the McGowen and Carr land to the river some distance south"; that at some

time Ploss filled in the ditch on his land making a blind ditch; that water flows from it into the open ditch on the plaintiffs' land; that when the defendants purchased their lot an iron pipe was placed in the open ditch on their land; that previous to this the "ditch had cut across the Carr property connecting a like ditch which runs through the McGowen property from its northern to its southern boundaries." It was further found that the land of the plaintiffs was flooded for the first time in April, 1927, "following the removal of a certain iron pipe which ran north to south in the rear of the Carr house"; that this pipe was removed in March, 1927, and "Thereafter the water flowing down through the ditch from the McGówen land found no outlet where the pipe had been, this in spite of the fact that the Carrs when they removed the iron pipe had dug a new ditch" connecting with the McGowen ditch; that the new ditch "was apparently not deep enough," and the water which would flow through the pipe was blocked "and backed up on the McGowen lawn." It was agreed that the deeds to the parties make no reference to any easements or water rights.

As we interpret the master's report the so called ditch was a natural watercourse that 'was in existence when the defendants became the owners of their land. It was small but well defined, and had been there for at least twenty years. It carried the water from the overflow of one of the springs on the north through the lands of the parties to the river on the south. See *Luther* v. *Winnisimmet Co.* 9 Cush. 171. As the ditch was a natural watercourse the defendants could not obstruct it. They could be restrained. As damage resulted they could be called upon to make good the loss suffered by the plaintiffs. *Hastings* v. *Livermore*, 7 Gray, 194. *S. C.* 15 Gray, 10. *Jackman* v. *Arlington Mills*, 137 Mass. 277. *Stimson* v. *Brookline*, 197 Mass. 568.

It was not essential that reference should have been made to the watercourse in the conveyance to the plaintiffs. ". . . *prima facie*, the right to a free flow of the water of a natural watercourse remains attached to the land,

and any one who would call it in question must prove his right to make such obstruction." *Lawrence* v. *Fairhaven*, 5 Gray, 110, 115. See *Carbrey* v. *Willis*, 7 Allen, 364, and cases cited, and *Washburn & Moen Manuf. Co.* v. *Salisbury*, 152 Mass. 346, 351. In our opinion it cannot be said that this ditch was an artificial one designed to carry surface drainage. It was, as we interpret the master's report, a natural watercourse carrying the water which came from the springs on the north, or at least from one of these springs. *Dickinson* v. *Worcester*, 7 Allen, 19, and *Stanchfield* v. *Newton*, 142 Mass. 110 are not in conflict.

We have examined the decisions cited by the defendants; they are not contrary to what is here decided.

<div align="right">

*Decree affirmed with costs.*