ADELARD I. FORTIER *vs.* H. P. HOOD & SONS, INC., & others.

Worcester.    September 24, 1940. — November 19, 1940.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Trespass. Drain. Equity Jurisdiction,* To enjoin continuing trespass, To enjoin flowage, Laches. *Easement. Prescription. Damages,* For tort.

Causing water in "substantial quantity" to flow from a drain in the defendant's building at the top of a hill in a continuous stream through a system of artificial pipes and ditches across the defendant's land and lands of others and finally to flow upon and over land of the plaintiff at the bottom of the hill was a continuing trespass toward the plaintiff for which he was entitled to equitable relief against the defendant although the stream so flowing from the defendant's building was greatly augmented and polluted before reaching the plaintiff's land

from contributory sources not on the defendant's land and from surface drainage.

The mere fact, that a drain from one part of a tract of land emptying onto another part was in existence when the owner of both parts conveyed the first, did not warrant the implication of an easement in the grantee to continue to flow the other part in the absence of evidence of the terms of the deed or that such flowage was reasonably necessary to the enjoyment of the granted premises. .

Open and continuous flowing of another's land from a drain for twenty years warranted a finding of an easement so to flow by prescription, but in a quantity no greater than that at the beginning of the twenty years.

Although the amount of water flowing upon a plaintiff's land after passing from a drain in the defendant's building through a system of pipes and ditches might not vary exactly in proportion to the amount of water put into the drain by the defendant, the extent of a prescriptive easement of the defendant to flow the plaintiff's land was measured with sufficient accuracy in the circumstances on the basis of the amount put into the drain at the beginning of the prescriptive period.

Laches barring a suit in equity to enjoin flowage of the plaintiff's land was not shown where no prejudice to the defendant resulted from the delay in bringing suit and the flowage was greatly increased in the period shortly before it was brought.

A defendant's contributing in an amount, which was "substantial" but was not capable of accurate measurement, to a flowage of the plaintiff's land from the defendant's land and other sources, although it entitled the plaintiff to relief by injunction, did not permit his recovery of damages.

BILL IN EQUITY, filed in the Superior Court on October 9, 1937, against H. P. Hood & Sons, Inc., Worcester Milk & Cream Co., town of Auburn, and Charles Cross.

An interlocutory decree confirming a master's report, and a final decree dismissing the bill, were entered by order of *Goldberg*, J. The plaintiff appealed from both decrees.

*A. W. Mitchell*, (*L. H. Lougee* with him,) for the plaintiff.

*J. A. Crotty*, for the defendants H. P. Hood & Sons, Inc., and another.

*G. H. Mirick & P. R. O'Connell*, for the defendants town of Auburn and another, submitted a brief.

QUA, J. This is a bill to enjoin the defendants from causing water to flow upon the plaintiff's land and for damages.

At the argument the plaintiff stated that he no longer pressed the suit against the defendants town of Auburn

and Cross. The master finds that the amount of water reaching the plaintiff's premises from the defendant Worcester Milk & Cream Co. "is so small as to be inconsequential." There is nothing to qualify the natural meaning of the words quoted. It follows that the bill was rightly dismissed as to all three of these defendants. *Downing* v. *Elliott*, 182 Mass. 28, 31. *Smith* v. *New England Aircraft Co. Inc.* 270 Mass. 511, 526, 531, 532. *Cragin* v. *Jones*, 283 Mass. 474, 480. The real question is whether the plaintiff should prevail against the remaining defendant H. P. Hood & Sons, Inc.

Without repeating the findings of the master in unnecessary detail, the following summary will indicate the situation and conditions out of which this suit arises: The plaintiff owns about ten acres of land on Southbridge Street partly in Worcester and partly in Auburn. This tract is located at the westerly and lower end of a long hill or slope constituting a water shed with an area of about three quarters of a square mile which naturally drains toward the plaintiff's land. The plaintiff's land, or at least a part of it, has always been damp and wet. For five or six years beginning in 1924 or 1925 the plaintiff filled it by allowing it to be used as a dump. Nevertheless for "a good part of the time" since 1931 pools of water have formed there, including one large stagnant pool in the northwest corner. The defendant H. P. Hood & Sons, Inc., operates a dairy upon or near the top of the hill about a third of a mile to the east of the plaintiff's land. Water used in this plant both for refrigeration and for washing bottles and cans flows into a drain and thence in a continuous stream through a system of pipes and ditches across lands of intervening owners and emerges from a twenty-four inch pipe a short distance from the plaintiff's land, whence it flows in a ditch upon and over the plaintiff's land. The stream is also fed from springs on the hillside, from a number of "blind drains" which run toward it, and from some other sources. The Hood refrigerating system alone produces a flow of from twenty-four hundred to twenty-eight hundred gallons a day, in addition to the water used for washing. Thus "a

substantial quantity" of water comes down from the Hood dairy each day, and "a portion" of it, incapable, as the master finds, of accurate measurement on the evidence before him, reaches the plaintiff's land and helps to form the stream and pools. "By far the greater portion of water coming down from the east onto the plaintiff's land is surface water from the hillside," but the amount of milk mixed with it from the washing of bottles and cans, though small in volume, is sufficient at times to give it "a perceptible milkish tinge." Another ditch reaches the plaintiff's premises from the south carrying surface water and sewage. Both streams are polluted as the result of cesspools and septic tanks appurtenant to neighboring houses. The ditch from the south is very much polluted and "is one of the chief causes of the condition of the pool" in the northwest corner of the plaintiff's land. The milk in the flow from the Hood plant does not cause pollution, and so far as appears from the findings none of the water entering the stream from the Hood plant does cause pollution. The master finds that in his view of the law applicable to the facts found none of the defendants has created a nuisance on the plaintiff's land.

Whatever definition of "nuisance" the master may have had in mind, his subsidiary findings, fairly construed, show that the defendant H. P. Hood & Sons, Inc., is causing water in appreciable quantity to be thrown upon the plaintiff's land in an artificial stream. If the amount which reaches the plaintiff from the Hood plant is small, it is, nevertheless, enough so that at times the milk contained in that part of it alone which has been used for washing bottles and cans "tinges" the entire flow of the stream from all sources, and this defendant in addition pours into the stream from twenty-four hundred to twenty-eight hundred gallons a day from its refrigerating plant. There is no finding that this defendant's contribution to the stream "is so small as to be inconsequential." The findings do not justify an inference to that effect. Nor do the findings support this defendant's contention that the stream is a natural stream. The water is first artificially collected in drains,

pipes and ditches on the upper part of the hill and continues to flow as a stream until it enters the plaintiff's land through a ditch leading from a pipe. Although the natural drainage of surface water from the hillside would be towards the plaintiff's property, there is no suggestion in the findings that there was ever a natural stream in or near the location of the present stream. The findings in this respect differ materially from the subsidiary findings which were held in *Fitzgerald* v. *Fortier*, 292 Mass. 268, to warrant the conclusion that another stream, in this same vicinity was a natural watercourse.

In the absence of any easement or other right, thus to throw or to assist in throwing an artificial stream upon land of another is a continuing trespass for which commonly a remedy may be had by injunction. *Curtis* v. *Eastern Railroad*, 14 Allen, 55; *S. C.* 98 Mass. 428. *Manning* v. *Woodlawn Cemetery Corp.* 245 Mass. 250. *Belcastro* v. *Norris*, 261 Mass. 174. *Siciliano* v. *Barbuto*, 265 Mass. 390, 391, 394, 395. There are in this case no findings indicative of the kind of peculiar hardship or of great disproportion between the injury done to the plaintiff and the burden of an injunction upon the defendant that has led to the denial of injunctive relief in a few exceptional cases of continuing trespass. See *Gray* v. *Howell*, 292 Mass. 400, where the cases are collected. So far as appears the Hood company can dispose of its water in some manner without throwing any of it upon the plaintiff's land. A finding that there are no sewers in neighboring streets does not establish that other methods of disposing of the water are not available, in so far as that is material. And of course the fact that strongly polluted water also comes upon the plaintiff's land from other streams and sources does not deprive the plaintiff of his remedy for the defendant's trespass. A trespasser cannot defend on the ground that trespass or pollution by another causes greater damage than his own trespass. *Parker* v. *American Woolen Co.* 195 Mass. 591, 603. The case is distinguishable from *Downing* v. *Elliott*, 182 Mass. 28, where injury to the plaintiff's ice caused by smoke and impurities in the air common to the neighborhood was held

too slight and uncertain to be the ground of an injunction (see *Smith* v. *New England Aircraft Co. Inc.* 270 Mass. 511, 531) and comes within the general rule illustrated by *Geragosian* v. *Union Realty Co.* 289 Mass. 104, and cases there cited, that a landowner is entitled to be protected by injunction against continuing trespasses of a physical and tangible nature.

The defendant is not relieved of responsibility for its acts by the fact that other persons and other sources contribute to the flow of the same stream into which it places its water. Nor is the causal connection between the defendant's act and the trespass upon the plaintiff's land broken by the fact that one Goodacre, an intervening owner, has built a catch basin in the line of the flow "so as to better take care of the water flowing in there." Whether this was done to prevent the water from saturating Goodacre's land or for some other purpose, it remains true that some of the water put in by the defendant at the top of the artificial stream, after flowing through the catch basin, comes out at the bottom upon the plaintiff's land and would not come out at the bottom if the defendant did not put it in at the top. The impounding of a volume of water by Goodacre in his catch basin is an immaterial circumstance as between the plaintiff and the Hood company. The Hood company's act and its consequences and the relation between them are the same for the purposes of this case as if no catch basin had been installed. See *Leahy* v. *Standard Oil Co. of New York*, 224 Mass. 352; *Wallace* v. *Ludwig*, 292 Mass. 251, 254, 255; Am. Law Inst. Restatement: Torts, §§ 879, 881. Whether Goodacre has become liable to the plaintiff is not before us.

What has been said brings us to the consideration of affirmative defences urged by the Hood company. First, it is contended, that in 1888 one Perry owned the entire hillside, and that he had already put in a drain from what is now the Hood land in the location of the present drain, and that water from it even then ran upon what is now the plaintiff's land, so that when Perry conveyed the Hood land he conveyed with it an implied easement to his grantee

to continue to drain over Perry's remaining land, including the part now belonging to the plaintiff. This defence of an implied easement was not pleaded, and the master's findings do not appear to have been framed with reference to it. It is not clear that Perry owned what is now the plaintiff's land at the time he conveyed what is now the Hood land, but if he did, other elements required for the implication of a grant of an easement are left undeveloped by the master's report. Without going further into details it is enough to say that there are no findings of such reasonable necessity to the enjoyment of the granted premises as must be shown to make out an implied grant. It does not appear that there were then any buildings upon the land. It does not appear what was being drained, or how much water was passing through the drain. *Gorton-Pew Fisheries Co.* v. *Tolman,* 210 Mass. 402, 410, and cases cited. *Raynes* v. *Stevens,* 219 Mass. 556, 557. *Davis* v. *Sikes,* 254 Mass. 540, 546. *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 284 Mass. 100, 105. *Oldfield* v. *Smith,* 304 Mass. 590, 594. The terms of the pertinent deeds are not before us. It would be unsafe to infer an easement by implied grant from anything in this record.

The defendant makes out a better case for its next contention that it has acquired an easement of some kind by prescription. This suit was brought October 9, 1937. Twenty years before that; in 1917, a predecessor in title of the Hood company was operating the dairy now operated by that defendant and was using the drain and stream in substantially their present location for purposes of the dairy. This use had begun in 1907 and had increased up to 1917. It has openly continued to the time of the bringing of this suit and, generally speaking, seems not to have been less at any time since 1917 than it was in that year, but on the contrary it kept increasing until 1934, after which it fell off somewhat. And in the absence of explanation an inference will commonly be drawn that a use which has been open and continuous has also been adverse. *White* v. *Chapin,* 12 Allen, 516, 519. *Truc* v. *Field,* 269 Mass. 524, 528–529. Thus the defendant H. P. Hood & Sons, Inc.,

establishes an easement by prescription to throw water upon the plaintiff's land through the artificial stream to the extent of the use actually made of the stream by it and its predecessors in title for the requisite period of twenty years.

But where a party justifies his act under an easement by prescription the burden is upon him to prove not only that an easement exists but also that it is broad enough to cover the thing that he has done. *Swensen* v. *Marino*, 306 Mass. 582. In the present case the Hood company has acquired no right to throw substantially more water upon the plaintiff's premises than its predecessor in title placed there in 1917. There may be circumstances under which the extent of a right claimed and acquired by prescription is not accurately measured by the amount of previous actual interference with the servient owner. See, for example, *Baldwin* v. *Boston & Maine Railroad*, 181 Mass. 166. But it is clear that ordinarily one who begins with a trickle of water at the beginning of the twenty years cannot acquire the right to flood his neighbor's land with a brook at the end of that time, even though the flow remains in the same location. *Middlesex Co.* v. *Lowell*, 149 Mass. 509, 511. *Shaughnessey* v. *Leary*, 162 Mass. 108. *Smith* v. *Gloucester*, 201 Mass. 329, 337. *Tinker* v. *Bessel*, 213 Mass. 74, 76. *Prentice* v. *Geiger*, 74 N. Y. 341, 347. *Dernier* v. *Rutland Railway, Light & Power Co.* 94 Vt. 187, 193. *Cranberry Creek Drainage District* v. *Elm Lake Cranberry Co.* 170 Wis. 362, 366. Gould on Waters, (3d ed.) § 342. See *Cotton* v. *Pocasset Manuf. Co.* 13 Met. 429.

This principle is applicable in this case. The amount of water put into the drain from the dairy has increased greatly since 1917, and especially since 1931, when the Hood company took title to the dairy. The amount required for the washing of bottles and cans is "in direct proportion to the volume of business being done." The master finds what that volume was in 1917. It increased to four times as much by 1934. In 1938 it was from two to three times as much. Besides this increase in the water used for washing there is an increase due to a change in refrigerating methods.

In 1917 the water employed in refrigeration was used over and over again without discharging it. Since that time a method has been introduced and is now used by which the water flows continuously for about eight hours a day, producing a daily flow, as hereinbefore stated, of from twenty-four hundred to twenty-eight hundred gallons. It may be true that the amount of water reaching the plaintiff's land from the Hood plant will not vary exactly in proportion to variations in the amount of outflow from the plant, but it is reasonable to suppose that in general there will be a fairly constant relation between the two. No other or better measure of the Hood company's rights seems available. In seeking a practical solution of the problem we think that this measure should be accepted, and that the Hood company now has an easement by prescription to place upon the plaintiff's land the quantity of water that will flow upon it through the present drains, pipes and ditches, if the quantity of water put into the drain at the dairy per day does not exceed the quantity put into it per day when, as the master finds, a business amounting to twenty-five hundred quarts of milk a day was done there in 1917. The findings fairly lead to an inference that the Hood company is now causing to reach the plaintiff's land a quantity of water which by a substantial amount exceeds that permitted by its easement and contributes to produce the pools upon the plaintiff's land.

Laches is also pleaded. The master has not found laches but submits that issue to the court upon the subsidiary facts found. The burden of proving this defence is upon the defendant. *Alvord* v. *Bicknell*, 280 Mass. 567, 571. Mere delay in bringing suit not extending beyond the period fixed by the statute of limitations is not enough unless accompanied by other circumstances making it inequitable to grant relief. No such circumstances have been shown. There is nothing to show that the building by the Hood company of an addition to its plant between 1931 and 1934 or the purchase by it of new vehicles for milk distribution was in reliance upon the use of the drain. It does not appear of how great importance this drain is in the operation

of the plant. If other means of disposing of the water cannot readily be adopted at small expense, that fact should have been made to appear. *Westhampton Reservoir Recreation Corp.* v. *Hodder, ante,* 288, and cases cited. Moreover, the greatest increase in the use of water occurred after 1931, when the Hood company acquired title, and did not reach its maximum until 1934, only about three years before this suit was brought, and after that it continued at a higher level than before 1931. The plaintiff may have deemed the earlier encroachment upon his rights as of minor consequence, but may have become convinced by what took place later that he ought to protect himself. The facts found do not satisfy us that there was laches. *Boston Rolling Mills* v. *Cambridge,* 117 Mass. 396, 400, 401. *Morse* v. *Hill,* 136 Mass. 60, 65–66. *Nudd* v. *Powers,* 136 Mass. 273, 277–278. *Daly* v. *Foss,* 199 Mass. 104, 107. *New York Central Railroad* v. *Ayer,* 239 Mass. 70, 77, 78. *A. W. Dodd & Co.* v. *Tarr,* 251 Mass. 189, 195. See *Manning* v. *Woodlawn Cemetery Corp.* 249 Mass. 281, 286.

There was no error in overruling the exceptions to the master's report and in confirming the report. Some of the exceptions are based upon the failure of the master to find particular facts as desired. The evidence is not reported. Others have become immaterial. The failure of the master to find money damages against H. P. Hood & Sons, Inc., is explained by his finding that the volume of water which actually reaches the plaintiff's land from the Hood dairy is "incapable of measurement with anything approaching accuracy." This is not inconsistent with other findings which we think show that a quantity sufficiently substantial to entitle the plaintiff to equitable relief does reach the plaintiff's land, but the finding of inability to measure the amount coming from this source, together with the findings as to the various other sources from which water comes upon the plaintiff's land, including surface water naturally accumulating there, indicates that any finding of damages in money would rest upon no safer foundation than guesswork and conjecture. Under these circumstances the plain-

tiff cannot recover damages. *Belcastro* v. *Norris*, 261 Mass. 174, 178. *Fred T. Ley & Co. Inc.* v. *Sagalyn*, 302 Mass. 488, 495.

The result is that the interlocutory decree overruling the exceptions to the master's report and confirming the report is affirmed; that the final decree is affirmed in so far as it dismisses the bill as to the defendants town of Auburn and Cross, with a single bill of costs to them; and that the final decree is reversed as to the defendant H. P. Hood & Sons, Inc., and a new final decree is to be entered permanently enjoining that defendant from putting into the drain leading from its dairy and described in the master's report a quantity of water per day in excess of that put into the drain per day in 1917 when that defendant's predecessor in title was doing a business amounting to twenty-five hundred quarts of milk a day, with costs to the plaintiff as against the defendant H. P. Hood & Sons, Inc.

*Ordered accordingly.*