PASQUALE DINARDO & another *vs.* MARIA L. DOVIDIO
& others.

Worcester.    September 21, 1942. — November 21, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Drain. Water. Damages,* For tort, Nominal. *Equity Pleading and
Practice,* Master: recommittal. *Real Property,* Drain, Water.

Upon conversion into a "blind" ditch of an open artificial ditch wholly on
land of the defendant, through which ditch a part of the water in a
natural watercourse on adjoining land of the plaintiff flowed instead
of through a portion of the channel of the natural watercourse on the
defendant's land, but which ditch had not been dug as a substitute
channel for the natural watercourse and was not subject to any ease-
ment of drainage in favor of the plaintiff's parcel, the plaintiff was not
entitled to have the blind ditch reopened although the conversion
impaired the efficiency of the ditch and contributed to damage to his
land through raising the water level thereof.

In a suit where the plaintiff was given equitable relief against injury to his
land through interference by the defendant with the natural flow of
water therefrom, and a master had filed a report, containing a summary

of the evidence on the issue of the plaintiff's damages from which it did not appear that the plaintiff had attempted to differentiate between damage resulting from such unlawful interference and damage caused by conduct of the defendant adjudged not unlawful, and a statement that it was impossible to compute damages in money "as much of the damage, though real, is based on conjecture," there was no abuse of discretion in refusing to recommit the report to the master on the matter of damages, and the plaintiff was not entitled to substantial damages, but was entitled to nominal damages.

BILL IN EQUITY, filed in the Superior Court on October 17, 1940.

The plaintiffs excepted to the report of a master and filed a motion to recommit, both on the matter of damages. By order of *Dillon,* J., there were entered interlocutory decrees denying the motion and confirming the report, and the following final decree: "1. That the plaintiffs have a right to drain the parcel of land owned by them over the parcel of land owned by the defendants. 2. That the defendants and each of them, their agents, assigns, and those claiming under them, be and hereby are severally permanently enjoined from obstructing or in any manner interfering with the flowage of water from the plaintiffs' land through and across land owned or occupied by the defendants or any of them and from doing any act or thing which shall cause a flowage of water upon land owned or occupied by the plaintiffs. 3. That the defendants and each of them are ordered to remove forthwith from the premises owned or occupied by them and adjoining the premises owned or occupied by the plaintiffs any and all obstruction in ditch 'A' to the drainage flow of water from the premises of the plaintiffs onto and across the premises of the defendants and shall not be required to open ditch 'D.' 4. That no damages be awarded to the plaintiffs. 5. That costs . . . are awarded to said plaintiffs."

The plaintiffs appealed from all the decrees.

*H. L. Barrett,* (*J. F. McGrath* with him,) for the plaintiffs.

*J. R. Oliver,* for the defendants.

Cox, J. The plaintiffs and the defendants are the owners respectively of two parcels of adjoining land. The defendants hold title as heirs at law of one Frank Dovidio, who

purchased in 1916. The plaintiffs purchased their parcel in 1920. On October 17, 1940, the plaintiffs brought this bill in equity seeking to restrain the defendants from obstructing an alleged watercourse originating on their land and extending across the defendants' land. They also asked that their damages be assessed.

The plaintiffs excepted to the findings of the master upon the sole question of damages. A final decree was entered granting the plaintiffs affirmative relief, but no damages. They appealed from the interlocutory decrees denying their motion to recommit and confirming the report, and from the final decree.

As we understand the master's report, in 1916, and for a long time prior thereto, the water from a spring on the plaintiffs' land constantly flowed across their land in an easterly direction to the westerly boundary of what is now the defendants' land, and thence continued in a northerly direction along what is now the common boundary of the parties for about one hundred feet, when it turned and ran easterly across the defendants' land, thence through a culvert under a street on its way to the Nashua River.

Upon a sketch annexed to the master's report (the substance of which is printed herewith), these several courses are indicated respectively as ditches C, B and A. The

original "gully or depression," where the water had flowed following the natural contour of the land, was deepened, widened and changed in course by "both parties" so that the natural flow of the water ran through the ditches. Portions of both parcels were wet and swampy, and the owners, who were friendly, dug ditches for drainage purposes. At some time that the master was unable to determine, ditch D, appearing on the master's sketch, was dug. This was entirely upon the defendants' land, and provided an almost direct route from ditch C to the culvert. Blind ditches connecting with these main ditches were dug from time to time, but the only ones in question are those indicated as A, B, C and D on the sketch. Everything appears to have gone well until 1936, when the defendants closed ditch D, that is, by making it a blind ditch, with the result that its efficiency was impaired in so far as taking water from ditch C was concerned. Before ditch D was closed, it worked "fairly efficiently," but did not entirely eliminate the water from ditch C.

It is unnecessary to go into the findings of the master relative to obstructions in ditch A and the refusal of the defendants to permit the plaintiffs to clean it, inasmuch as the plaintiffs were given affirmative relief in these respects by the final decree from which the defendants have not appealed.

One important question for determination is whether the plaintiffs are entitled to have ditch D reopened. The closing of this ditch, together with the obstructions in ditch A, resulted in raising the water level on the plaintiffs' land and in making the portion of it nearest ditches C and B too wet for the successful growing of market crops. The master found that there was "a natural watercourse" over the lands of both parties and that the defendants have interfered "in the following manner with the natural flow of the water, to the damage of the plaintiffs: (1) By eliminating the rounding curves at the intersections of ditches B and A, and by making right angle turns at those intersections. (2) By failing to keep ditches B and A clean and by refusing to permit the plaintiffs to enter upon their land

for the purpose of cleaning A. (3) By permitting the high spot in ditch A . . . to remain, causing water to accumulate on the plaintiffs' land. (4) By making a blind ditch out of ditch D." He recommended that the defendants be not ordered to reopen ditch D, and the final decree is that the defendants shall not be required to open it. It does not appear that the water, in its natural course, ever flowed across the defendants' land in the direction of what is now ditch D, and it does not appear when this ditch was dug.

It is not contended that ditches C, B and A are not a watercourse as to which both parties have the rights and obligations pertaining to a natural watercourse. See *Luther* v. *Winnisimmet Co.* 9 Cush. 171, 174, 175; *McGowen* v. *Carr*, 272 Mass. 573, 576. The defendants had a duty not to obstruct wrongfully the water in this course to the plaintiffs' damage. *Hastings* v. *Livermore*, 7 Gray, 194, 196. *Yaskill* v. *Thibault*, 273 Mass. 266. See *Cary* v. *Daniels*, 5 Met. 236, 238, *S. C.* 8 Met. 466, 476; *Ashley* v. *Ashley*, 6 Cush. 70. The plaintiffs' contention, however, is that they are entitled to additional relief against the defendants by requiring them to open ditch D and, apart from a question of damages, this is the only question raised by their appeal.

A landowner has no right to subject the land of another to a servitude of running water to which it is not naturally subject. *Jackman* v. *Arlington Mills*, 137 Mass. 277, 283. Such a right, however, may be acquired. There are no easements of drainage in the deed of either party, and it does not appear from the findings of the master that the plaintiffs have acquired by adverse user any right of drainage through ditch D. When or by whom this ditch was dug does not appear. It was entirely upon the land of the defendants, but the plaintiffs, prior to 1936, "with the approval of the defendants," often cleaned it. See *White* v. *Chapin*, 12 Allen, 516, 522. Neither does it appear that it was dug as a substitute channel for the original watercourse. So far as appears, the original course was not abandoned. In fact, one complaint of the plaintiffs is that the defendants have obstructed it. The deepening, widen-

ing and changing in course of the "original gully or depression" by "both parties" were "without complaint from the other though neither party intended by his actions or otherwise to waive any of his rights with respect to drainage." As bearing upon the utility of ditch D when open, we have the finding of the master that a "high spot" in ditch A causes the water in ditch C to be kept at a higher level than it was when ditch D was open, and that this "hump" interferes with the drainage of the plaintiffs' land. Undoubtedly, the plaintiffs could acquire rights by prescription in the use of ditch D, *Smith* v. *Miller*, 11 Gray, 145, 146–147, 149; *Truc* v. *Field*, 269 Mass. 524, 528, 529; see *Stimson* v. *Brookline*, 197 Mass. 568, 571, 572; *Fitzgerald* v. *Fortier*, 292 Mass. 268, 272–274, but it does not appear that they have. It is true that the master found that the defendants had interfered with the natural flow by making a blind ditch out of ditch D. Throughout his report, however, he refers to but one watercourse. He finds categorically that there was a natural watercourse over the lands of the parties. As we read the report, this course is defined as hereinbefore stated. His last finding is that the failure to keep ditch A clean constitutes an obstruction to the drainage of the plaintiffs' land, and his recommendation, "if . . . within . . . [his] province," is that the defendants shall not be ordered to reopen ditch D. We are of opinion that there was no error in the final decree to the effect that the defendants shall not be required to open this ditch.

The plaintiffs' other contention is that they are entitled to recover damages, at least nominal damages. The master found that it was impossible to compute accurately the plaintiffs' damages "as much of the damage, though real, is based upon conjecture." The plaintiffs asked for damages, and offered evidence on the question. Affirmative relief was granted the plaintiffs, but no damages. Where equitable relief is denied, it is discretionary with the court either to retain the suit for assessment of damages, or to dismiss the bill with the reservation to the plaintiff of his right to recover damages in an action at law. *Booras* v. *Logan*, 266 Mass. 172, 175. It is desirable when a suit is

heard, that all matters involved be determined. The plaintiffs rightly contend that they were not required to establish their damages with mathematical exactness. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 380. The plaintiffs' motion to recommit, which was denied, was addressed entirely to the question of damages. From an examination of the report, we are of opinion that there was no abuse of discretion in the denial of this motion. The master has summarized the evidence on the question of damages and the motion to recommit appears to be based upon this summary. Although his statement that it is impossible to compute accurately the damage in dollars and cents from the evidence, "as much of the damage, though real, is based upon conjecture," may not bring the question precisely within the rule stated in *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292, 301, 302, nevertheless, we are of opinion that it comes within its spirit. For example, it does not appear that the plaintiffs made any effort to differentiate between their damage resulting from the obstruction in ditch A and the closing of ditch D. Clearly, in such circumstances, a master was not required to make any such differentiation, and it does not appear that there was anything to enable him to do so. Furthermore, it may be doubted whether the evidence which the master summarized furnished a sound basis for determining the damages under the applicable rule. See *Belkus* v. *Brockton*, 282 Mass. 285, 287, 288; *Ryder* v. *Lexington*, 303 Mass. 281, 290, 291.

In the *Fortier* case where it was said that any finding of damages in money would rest upon no safer foundation than guesswork and conjecture (page 301), it was held that in these circumstances the plaintiff could not recover damages. The plaintiffs, however, in support of their contention that they are entitled to nominal damages, rely on the case of *Belcastro* v. *Norris*, 261 Mass. 174, cited in the *Fortier* case, where, upon the finding of the master that the plaintiffs' land had been damaged, the amount of which could not be determined, it was held that the plaintiffs were entitled to nominal damages and a decree was entered for them for nominal damages and injunctive relief against the

defendant. In the case of *Fred T. Ley & Co. Inc.* v. *Sagalyn,* 302 Mass. 488, no substantial damage was shown, although a technical breach of covenant giving the plaintiff a right to nominal damages at law was properly found. (Page 492.) The final decree of the Superior Court was reversed, and a new final decree was entered dismissing the bill with costs. It was said, at page 495: "Equity pays no attention to nominal damages," citing *Cragin* v. *Jones,* 283 Mass. 474, 480, where it was held that, since the plaintiff was not entitled to equitable relief, there was no error in entering a final decree dismissing the bill "without reference to nominal damages." We think, however, that the suit at bar comes within the rule stated in the *Belcastro* case, and that the final decree should contain a provision for nominal damages.

The interlocutory decrees are affirmed, and the final decree, modified in accordance with this opinion, is affirmed.

*Ordered accordingly.*