LINCOLN PARK AMUSEMENT COMPANY *vs.* TOWN OF WESTPORT.

Bristol. May 5, 1959. — June 3, 1959.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Water. Way*, Public: culvert. *Municipal Corporations*, Watercourse. *Equity Pleading and Practice*, Decree.

A finding by a master that for forty-six years water from a pond on the plaintiff's land flowed through a culvert under an adjacent public way controlled by a town into a tributary of a river warranted a conclusion that the culvert had become a natural watercourse which the town had a duty to keep open, even if the plaintiff wrongfully discharged effluent from a sanitation plant on his land into the stream. [336–337]

A final decree in a suit in equity ordering a town to open under a public way "an adequate culvert to conduct" a natural watercourse across the way was construed as requiring the opening of a culvert adequate to take care of a lawfully permitted volume of water in the watercourse and as not precluding the town from seeking to prevent overloading of the watercourse. [337]

BILL IN EQUITY, filed in the Superior Court on January 23, 1958.

The suit was heard by *Kirk*, J., on a master's report.

*John J. Harrington,* for the defendant.

*Edward F. Harrington,* for the plaintiff.

WHITTEMORE, J. This is the defendant's appeal from a final decree of the Superior Court ordering the town "to reopen and to maintain in good operating condition the culvert under Beeden Road . . . which . . . formerly served to conduct the stream constituting an outlet from the pond on the . . . [plaintiff's] land into a . . . branch of the Westport River" or to install and so maintain in the same location as the former culvert "an adequate culvert to conduct" the stream, and enjoining the town from blocking or interfering with the flow of water through the culvert.

The case was referred to a master who found that the plaintiff owns a thirty-two acre tract of land on which it operates an amusement park. Since 1908, there has been a pond on the land toward which all the surface and subsurface waters accumulated thereon flowed. The pond is adjacent to Beeden Road, a highway under the exclusive control of the town. From 1908 to 1954, water from the pond flowed under the road through a culvert into a tributary of the Westport River. Between 1954 and 1957, water came out of the pond by flowing over the road or through natural seepage at the bottom thereof.

After acquiring title in 1941, the plaintiff removed certain trees, raised certain spots of low land, and black topped approximately ten acres of the land. The black topping did not change the contour or natural grade of the land. Sometime after 1954, as a result of complaints made by the State department of public health that a stench was caused by

sewage emanating from the land, the plaintiff installed a sanitation plant with a maximum capacity of 30,000 gallons a day (predicated on maximum use of the facilities of the amusement park) which would render the effluent from ninety-seven to ninety-nine per cent bacteriologically pure without detrimental effect to the Westport River for bathing, recreation, fishing or shellfish cultivation or to the health, comfort and safety of residents of the town or to abutting land. Sewage treatment is not one hundred per cent perfect, but the water would have a biochemical oxygen demand rating of no greater than three or four "and would cause no harmful effect except that it is not recommended for drinking for babies under six months." The department of public health approved the erection of the sanitation plant as being in accordance with modern sanitation methods and maintains strict supervision of its operation to prevent impairment of the water downstream.

The sanitation plant was substantially completed in September, 1957. In the fall of that year, the town caused Beeden Road to be raised approximately four to six feet in the area of the pond without provision for a culvert under the road. The purpose of raising the road was to prevent water from flowing from the plaintiff's land. Since the elevation of the road, water accumulates in the pond in greater quantities than before, preventing the proper operation of the plaintiff's sanitation plant. In order to permit proper operation of the plant, there must be a free flow of effluent from one side of the road to the other by means of a culvert or otherwise.

The master's finding that from 1908 to 1954 water flowed through the culvert from the plaintiff's land to a tributary of the Westport River supports the conclusion that the culvert had become a natural watercourse (*Stimson* v. *Brookline*, 197 Mass. 568, 571–572; *Fitzgerald* v. *Fortier*, 292 Mass. 268, 274) which the town had a duty to keep open. *Parker* v. *Lowell*, 11 Gray, 353, 357–358. *McGowen* v. *Carr*, 272 Mass. 573, 576. *Belkus* v. *Brockton*, 282 Mass. 285, 287. See *Ryder* v. *Lexington*, 303 Mass. 281, 288; *DiNardo* v.

*Dovidio,* 312 Mass. 398, 402. Compare *Maddock* v. *Springfield,* 281 Mass. 103.

There is nothing in the point that the defendant is excused from reopening the culvert because the plaintiff had no right to discharge effluent into the stream. Even if such discharge was wrongful the defendant was not justified in obstructing the stream. *Yaskill* v. *Thibault,* 273 Mass. 266, 269. There are lawful remedies available should the operation of the plant pollute the stream. *Merrifield* v. *Lombard,* 13 Allen, 16, 18. *Parker* v. *American Woolen Co.* 195 Mass. 591. *MacNamara* v. *Taft,* 196 Mass. 597, 602. *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292. *Dartmouth* v. *Silva,* 325 Mass. 401, 404–405.

While, as stated, there is a finding that the treatment plant has a capacity of 30,000 gallons a day, the extent to which the use of the treatment plant will increase the flow in the stream does not appear. The plaintiff has no right materially to increase the flow of water from its land so as to cause injury to downstream owners. *Jackman* v. *Arlington Mills,* 137 Mass. 277, 283–284. *Belcastro* v. *Norris,* 261 Mass. 174, 177. *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292, 299. It may not "overload the watercourse" to the damage of other land. *Ryder* v. *Lexington,* 303 Mass. 281, 288. *DiNardo* v. *Dovidio,* 312 Mass. 398, 402–403. We construe the decree as requiring the opening of a culvert adequate to take care of the water of the watercourse without more increase in its volume than is lawfully permitted and as not foreclosing any right of the town to take any lawful action or to obtain relief in court in the event that the watercourse is overloaded. So construed, the decree is affirmed.

*So ordered.*